McClung, *Plaintiff in Error*, v. Missouri Trust Company *et al.*

### Division Two, January 19, 1897.

1. **Deed of Trust:** FORECLOSURE SALE: SURPLUS. Where the purchaser from a grantor in a deed of trust also buys at the foreclosure sale, the trustee is not bound to accept as part payment of the bill the purchaser's receipt for the surplus over and above the debt, interest and costs of sale, where others before sale make claim to such surplus.

2. ———: ———: RE-SALE. The trustee may in such case reject the bid unless money is paid at the time and proceed with the sale, or he may sell to the next highest bidder; if he does not pursue such course, he may re-advertise the property for sale on another day.

3. ———: TENDER. Tender of the debt and interest secured by a deed of trust, though made after default, releases the mortgage lien.

4. ———: ———. Where a foreclosure sale fails because of noncompliance with its terms on the part of the purchaser, a tender of the debt and interest alone, without including the cost of the attempted sale, will not release the lien.

*Error to Johnson Circuit Court.*—Hon. Charles W. Sloan, Judge.

Affirmed.

*Geo. W. Harrison* for plaintiff in error.

(1) It was the duty of the trustee to accept the receipt of the plaintiff for the surplus over and above the debt, interest and costs of sale. *Boots v. Ristine,* 44 N. E. Rep. 15. (2) After having made a valid sale and having the debt, interest and costs of sale, and a receipt for the surplus, tendered him, the trustee had exhausted his power and should have been restrained from making another sale and thus sacrificing

the plaintiff's property.   The sale should have been re-
strained and the sheriff should have been directed by
the court to take the receipt of the plaintiff for the
surplus and accept the debt, interest and costs of sale.
(3)   Where lands are granted upon condition that the
conveyance should be void upon the payment of a
certain sum, at a particular time by the grantor, if he
pays the money, or makes a tender of it at any time
before foreclosure or a sale under the deed, this de-
stroys the lien of the deed of trust.   Hilliard on Mort-
gages [3 Ed.], pp. 20, 21; *Jackson v. Crafts*, 18
Johns. 110; *Caruthers v. Humphreys*, 12 Mich. 270;
*Estow v. Mitchell*, 26 Mich. 500; *Korturight v. Cady*,
21 N. Y. 343; *Ins. Co. v. Edwards*, 26 Wend. 541;
*Thornton v. Bank*, 71 Mo. 221; *Whelan v. Reilly*, 61
Mo. 565.   (4)   Mrs. McClung, by the purchase of the
land subject to defendant's deed of trust, became the
representative of Yankee, the original mortgagor, and
a tender made by her after default will destroy the lien
of the deed of trust.   *Olmstead v. Tarnsney*, 69 Mo. *loc.
cit.* 399; Hilliard on Mortgages [3 Ed.], pp. 395–
397.   (5)   Plaintiff was only bound to pay the amount
of the debt, interest and costs.   The surplus over be-
longed to her.   *Reid v. Mullins*, 43 Mo. 306; *Reid v.
Mullins*, 48 Mo. 344; *Strawbridge v. Clark*, 52 Mo. 21;
*Foster v. Potter*, 37 Mo. 534; *Every v. Edgarton*, 7
Wend. 259.   (6)   Defendant was not entitled to an at-
torney's fee.   *Phillips v. Bailey*, 82 Mo. 639; *Whelan
v. Reilly*, 61 Mo. 565.   (7)   A trustee in a deed of
trust is the agent of the other parties to the deed and
should pursue that course most beneficial to the
grantor or debtor.   *Goode v. Comfort*, 39 Mo. 314;
*Chesley v. Chesley*, 49 Mo. 540; *Sherwood v. Saxton*, 63
Mo. 78; *Judge v. Booge*, 47 Mo. 544; *Vail v. Jacobs*,
62 Mo. 131.

*O. L. Houts* and *Sangree & Lamm* for defendants in error.

(1) The rule at common law was that a tender had to be made before default in order to operate as a discharge of the lien. 2 Jones on Mortgages, secs. 891 and 892. See, also, *Landis v. Saxton*, 89 Mo. 375; *McGuire v. Brockman*, 58 Mo. App. 307. (2) Besides, a tender to be effective must be kept good. *Berthold v. Reyborn*, 37 Mo. 587; *Henderson v. Cass Co.*, 107 Mo. 50. (3) The appellant's position is further not well taken because there was not a full tender; he did not offer to pay the costs and expenses incurred by the sheriff and defendant trust company in executing the trust. *Whelan v. Reiley*, 61 Mo. 565; *Audenreid v. Hull*, 45 Mo. App. 202; *Cupples v. Gallighan*, 6 Mo. App. 62. And see 2 Jones on Mortgages [3 Ed.], sec. 901, and authorities cited; 25 Am. and Eng. Ency. of Law, pp. 910, 911, and notes; 1 Beach on Mod. Equity Jurisprudence, sec. 519. (4) There being different persons claiming the surplus the trustee was right in refusing to execute a deed except on payment of the bid in cash. *Foss v. Bank*, 3 Fed. 185; 2 Perry on Trusts [2 Ed.], secs. 476, 927, 928; *Roselle v. Bank*, 119 Mo. 84; *Hilton v. St. Louis*, 99 Mo. 199; 2 Story's Eq. Juris. [13 Ed.], secs. 806, 808, 824; *Hayden v. Marmaduke*, 19 Mo. 403. (5) The case of *Reid v. Mullins*, 48 Mo. 344, cited and relied on by plaintiff, is not in point. There the trustee meddled with matters outside of his office and espoused the side of the creditors against the claimant of the equity, instead of standing impartial and demanding an interplea. (6) The terms of the sale being cash, the trustee had three choices: *First*, He could have resold *instanter* on failure to pay cash, or, *second*, could have readvertised as

he did, or *third*, in the exercise of a wide discretion, he could then and there have accepted the next highest bid. *Davis v. Hess*, 103 Mo. 31; *Barnard v. Duncan*, 38 Mo. 170; *Dover v. Kennedy*, 38 Mo. 469.

BURGESS, J.—This is a proceeding in equity for. the purpose of having declared null and void a certain deed of trust; the lien upon certain real estate therein described set aside and canceled of record; and to enjoin defendants and all persons acting under them from proceeding to sell said land or to take possession thereof under said deed. A temporary injunction was granted plaintiff in accordance with the prayer of her petition.

Defendants answered, and thereafter filed their motion to dissolve the injunction, and upon a hearing of this motion the court made a finding of facts, dissolved the injunction and rendered judgment for defendants.

The finding of facts, and judgment are as follows:

"That on the twenty-eighth day of January, 1886, John F. Yankee was the owner of the south half of the northeast quarter of section 27, township 47, range 26, in Johnson county, Missouri, and on that day executed his certain promissory note to the defendant, the Missouri Trust Company, for the sum of one thousand dollars, due in five years from that date, at the annual interest of seven per cent until due, and ten per cent after due and until paid; that on said twenty-eighth day of January, 1886, he executed and delivered a deed of trust on said real estate to B. H. Ingram to secure the payment of said note; the same to be void upon the payment by said Yankee, or his legal representatives, when the note became due, with the further provision in said deed that in case of the death or refusal to act, or absence from the county or

other disability of the said B. H. Ingram to act, then the acting sheriff of Johnson' county, Missouri, shall execute said trust. That on the sixteenth day of February, 1886, John F. Yankee aforesaid, by his deed, conveyed said real estate to Sarah E. Yankee and David H. Yankee, reserving a life estate to himself and Martha A. Yankee, his wife, or the survivor of them. That Martha A. Yankee departed this life on the fifteenth day of May, 1887, leaving the said John F. Yankee surviving her. That afterward, to wit on the thirtieth day of May, 1887, the said John F. Yankee, by his deed, conveyed his said life estate in and to said real estate to David H. Yankee and Sarah E. Carrington, being the Sarah E. Yankee named aforesaid. That the said John F. Yankee departed this life on the sixth day of November, 1888; that on the twelfth day of February, 1889, the said Sarah E. Carrington and Wiley P. Carrington, her then husband, and David H. Yankee, aforesaid, sold and by their deed conveyed to this plaintiff, Hattie N. Mc-Clung, all their right, title and interest in and to said real estate, subject to the claim of this defendant, the Missouri Trust Company, of one thousand dollars; which deed was filed for record in the recorder's office for Johnson county, Missouri, on the fifth day of April, 1889, and duly recorded in the records of said office in book 73, at page 112. That this plaintiff entered into possession of said real estate, under and by virtue of said deed to her, and has ever since paid the taxes on the same, and since the date of her deed has paid the interest on said note of one thousand dollars aforesaid to this defendant, the Missouri Trust Company, as the same came due, except as hereinafter stated.

"The court further finds that the said debt of one thousand dollars and interest for the year 1890 became

due the first day of February, 1891. That on the —— day of August, 1891, these defendants caused a notice to be published in the *Journal-Democrat*, a newspaper published in Johnson county, Missouri, stating that on the fifth day of September, 1891, the defendant W. H. H. Collins, sheriff and trustee aforesaid, would on that day proceed to sell all of said real estate to the highest bidder, for cash in hand, at the courthouse door, in the county of Johnson, state of Missouri, to pay said debt and interest with costs of sale (which debt and interest then amounted to the sum of $1,139.20).

"That at and prior to the fifth day of September, 1891, and before said sale said Collins as sheriff was notified by Samuel Sparks that he claimed, as attorney on behalf of one S. P. Cutler, whatever amount of surplus would be in his hands after paying the debt, interest and costs at said sale. That at said sale George W. Harrison bid in said land at $1,700 on behalf of the plaintiff, and demanded of said sheriff the execution to said plaintiff of a deed of said land on payment by him of the said debt, interest and costs of executing the sale, and the acceptance by said trustee of a receipt on behalf of plaintiff, which said Harrison offered to execute as her attorney, for the surplus in the hands of the said sheriff as trustee. That thereupon said sheriff took counsel of W. W. Wood, who advised him to hold the surplus subject to a determination of the rights of the different claimants therein. That said sheriff refused to execute said deed to plaintiff without payment of the full amount of said bid of $1,700, and said complainants refused absolutely to pay the full amount of said bid in cash.

"That the defendant corporation had employed one J. K. Tyler as their agent to look after and attend the sale by said sheriff as aforesaid, and to see that

the land would bring the full amount of the debt and costs; and that said Tyler was present at said sale, but did not bid thereon. That said Sheriff Collins, in rejecting the offer of said Harrison to pay as aforesaid, did not act upon the advice of defendant corporation or its agent. That the amount of costs incurred at said sale, and as charged by said sheriff, were as follows: Sheriff's commission, $27; for advertising said sale in the *Journal-Democrat*, $13.75; and for trustee's deed, $5.

"That thereafter, on the ninth day of September, 1891, said Harrison, as attorney for plaintiff, procured from officers of the Citizens Bank the sum of $1,140.50, and took the same, in company with the cashier of said bank, to the office of said Tyler and counted said money out and tendered the same to said Tyler, as agent of the said corporation, in payment of the amount of debt and interest remaining due (which tender he was then and there ready to comply with) and stated to him that he would give him until noon to accept said proposition. That said Tyler thereupon stated that he was not authorized to accept said sum without consulting his client, then doing business in Sedalia, Missouri, but that he would write to his client in regard to the same.

"That the amount so offered to said Tyler was the full amount of the debt and interest, exclusive of the costs incurred in the advertisement and sale of said land at that date. The said Harrison, in making said tender, refused to recognize or pay any amount of costs then demanded or claimed by said Tyler, of which amount was a fee of $10 claimed by said Tyler for his services in attending to and looking after said sale on behalf of the defendant corporation.

"That on the next day said Tyler met said Harrison and told him that to avoid further trouble he

would accept the amount offered to him the day before and satisfy the record of said deed of trust. Which offer said Harrison then and there refused to accede to.

"The court further finds that said Harrison, in procuring the money to make said tender on the ninth day of September, 1891, made an arrangement with the officers of the Citizens Bank by which said bank was to furnish said money by plaintiff executing a deed of trust on certain property in Warrensburg and on the land in controversy, and taking up said $1,000 note and delivering that and said deed of trust as collateral security to secure the amount thus borrowed; and that it was the understanding and arrangement that on payment of said amount of principal and interest aforesaid that said note and deed of trust were to be delivered over to said Citizens Bank, and that in case the sheriff did not make and execute a deed to plaintiff for the said lands as trustee, the bank was to retain the note of $1,000 and deed of trust referred to as collateral security for the money furnished plaintiff.

"The court finds that by the terms of said deed of trust it was prescribed therein that the trustee, on a sale of the land, should, out of the proceeds of such sale, pay first the costs and expenses of said trust, or of the trustee and attorney's fees, and next the full amount of the principal of said coupon notes, whether the same had matured or not, and next whatever might be in arrears or unpaid on the coupons and interest thereon; and the balance, if any, was to be paid to the grantor or his legal representatives.

"The court further finds that there was no purpose on the part of the defendant company, or its agent, James K. Tyler, and the defendant sheriff, to oppress, wrong, cheat and deprive plaintiff of her lawful rights in the premises.

"That prior to the issuing of the restraining order herein there was still due and unpaid $1,140.20 of the principal debt and interest thereon in favor of said defendant corporation, and that said trustee had again advertised said land for sale for the payment of said debt and costs of executing the trust.

"It is therefore considered, ordered, adjudged and decreed by the court that the defendants' motion to dissolve the injunction herein is sustained, and the plaintiff's injunction is dissolved, and her bill dismissed, and that defendants recover their costs herein and that execution issue therefor.

"And again come the parties on defendants' motion for the assessment of damages herein coming on to be heard, and neither party requiring a jury, the same is taken up and submitted to the court upon the pleadings and evidence, and the court doth find that the defendant, the Missouri Trust Company, by reason of this injunction, and in the defense thereof, has sustained damages in attorneys' fees, incurred and expended, in the sum of one hundred and fifty dollars, and in other costs and expenses in the sum of twenty-five dollars, in the aggregate the sum of one hundred and seventy-five dollars.

"It is therefore considered and adjudged by the court that the defendant, said Missouri Trust Company, recover of the plaintiff, Hattie N. McClung, and her security upon the injunction bond, Jacob Hirsch, said sum of one hundred and seventy-five dollars, and that execution issue therefor."

Plaintiff brings the case to this court by a writ of error for review.

No bill of exceptions was filed, so that there is nothing before this court for review except the record proper.

One of the chief questions involved in this contro-

versy is as to the duty of the trustee with respect to the surplus over and above the debt and interest secured by the deed of trust, and costs attending the trustee's sale. Plaintiff claims that the facts found by the court showed that she was entitled to the surplus and that it was the duty of the trustee to accept her receipt for the amount, instead of requiring her to pay the amount of her bid at said sale in cash.

In support of this contention plaintiff relies upon *Boots v. Ristine,* 44 N. E. Rep. 15, in which it is said that, an "execution creditor may make a valid purchase without paying the amount of the principal debt to the sheriff, where, in lieu thereof, he receipts to the sheriff for that amount, and where there is no question of his first right to the fund otherwise paid to the sheriff."

If there was no question in the case at bar as to plaintiff's right to the surplus fund that case would be in point, and an authority for plaintiff's contention, but in this case the answer alleged that "divers persons claim said land and adverse interests therein, and were and are litigating the same." And the court in its finding of facts also states that defendant Collins, as sheriff, was, prior to the day of sale, notified that one S. P. Cutler claimed whatever amount of surplus would be in his hands after paying the debt, interest and costs at said sale; that thereupon said sheriff took advice of counsel, who advised him to hold the surplus subject to a determination of the rights of the different claimants therein and that he on refusing to accept plaintiff's receipt and in demanding the cash on her bid acted in good faith, and without any purpose to oppress, wrong, or to deprive her of her lawful rights in the premises.

A trustee in a deed of trust is the representative of all parties thereto, and in discharging his trust he must act impartially and to the best interest of all concerned. If by mistake or misapprehension he pays over the pro-

ceeds derived by him from a sale of the property under the deed of trust to a person not authorized by its terms to receive it, or to any person not legally authorized to do so, he will be held personally responsible for the misapplication, to any person who can establish a better right.    2 Perry on Trusts [2 Ed.], sec. 927.

It has, however, been said that, "a trustee can not be expected to incur the least risk in the distribution of the trust fund.    Therefore, where there is a mere shadow of doubt as to the rights of the parties, he may require a bond of indemnity.    *   *   *   Therefore, if a third person makes a claim, or if he refuses to state whether he has a claim, where the trustee has a right to know, the trustee may bring such person before the court by bill," etc.    *Ib.*, sec. 928.

The question as to the proper disposition of the surplus arising from a sale of the trust property by the trustee under a deed of trust is one often difficult of solution, wherein the trustee if he acts at all and pays over the surplus does so at his peril.    In such circumstances he should refer the matter to the proper tribunal for determination for his own protection and act in conformity with its directions.    26 Am. and Eng. Ency. of Law, 957.

In the case in hand the surplus was not paid to the trustee, nor was it offered to be paid, but plaintiff, claiming to have theretofore acquired all the interest of the grantor in the deed of trust to the property therein described, and by reason thereof entitled to the surplus, on becoming the purchaser at the trustee's sale, tendered to the trustee her receipt for the surplus which he declined to accept because of there being a controversy over it, the finding of the court showing that there was no purpose on the part of Collins, the trustee, to oppress, wrong, or to deprive plaintiff of her lawful rights in the premises.

It may be if there had been no question as to the first right of plaintiff to the surplus fund, that the trustee would have committed a breach of duty in declining to accept plaintiff's receipt therefor when offered to him *(Boots v. Ristine, supra)*; but that is not this case. And whatever her rights may have been he was not, we think, under the circumstances, bound to accept the receipt, and thereby take upon himself a risk which the law did not require him to assume.

As has been suggested by counsel for plaintiff, had the trustee made a valid sale of the property under the power conferred upon him by the deed of trust he would have exhausted his power to again sell under it, but as we have said, the sale was not valid because of the non-compliance by plaintiff with its terms. The trustee might have rejected her bid at the time made unless paid at once, and then proceeded with the sale; "or he might have struck off the property to the next highest bidder." *Dover v. Kennerly*, 38 Mo. *loc. cit.* 475; *Davis v. Hess*, 103 Mo. 31. But as he permitted the time to pass by and there was no sale, it was proper for him to readvertise the property for sale on another day. *Barnard v. Duncan*, 38 Mo. 170.

It is claimed by plaintiff that the tender of $1,140.50, made by her to J. K. Tyler, on the ninth day of September, 1891, as the agent of defendant, the Missouri Trust Company, to look after and attend the sale and see that the land brought the full amount of the debt and costs, destroyed the lien of the deed of trust, and divested the trustee of all power to sell thereunder.

The generally accepted doctrine is that the tender of the amount of the indebtedness secured by the mortgage, made after default, will not discharge the mortgage but will stop the running of interest from that time. 15 Am. and Eng. Ency. of Law, 873. There can be no question but this was the rule at common

law.   1 Jones on Mortgages [4 Ed.], sec. 892;   1 Pin-
grey on Mortgages, sec. 1122.

In *Shields v. Lozear*, 34 N. J. L. 496 (*loc. cit.* 505)
it is said:

"Tender on the day named determinates the estate
of the mortgagee, because it is performance of the con-
dition.   Regarding the mortgage as remaining after
default, only as a security for the debt, payment there-
after, by a necessary sequence, operates as extinguish-
ment; the debt being the principal and the security the
accessory.   Whatever discharges the debt extinguishes
the security.   No reason, founded in principle, can be
assigned for giving that effect to a tender after forfeit-
ure.   The appropriate office of a tender is to relieve
the debtor from subsequently accruing interest, and
the costs of enforcing, by a suit, the obligation which
by the tender of payment he was willing to perform.
The debt still remains."

Similar rulings were made in *Rowell v. Mitchell*,
68 Me. 21; *Perre v. Castro*, 14 Cal. 519.   In the case
last cited it was said: "It would be very harsh to hold
that the debt is lost—the general effect of losing the
security—by a mere refusal at a particular moment to
receive it—that refusal induced, too, as it might be, by
a variety of circumstances morally excusing it, or at
least, not grossly violative of any positive duty, and pro-
ductive of little or no injury to any one."   (At p. 530.)

That case was followed and approved in *Himmel-
mann v. Fitzpatrick*, 50 Cal. 650.   The same rule is an-
nounced in *Phelps v. Sage*, 2 Day (Conn.), 151; *Storey
v. Krewson*, 55 Ind. 397; *Erskine v. Townsend*, 2 Mass.
493; *Maynard v. Hunt*, 5 Pick. 240; *Currier v. Gale*, 9
Allen, 522; *Holman v. Bailey*, 3 Metc. 55.

In some of the states a different rule is anounced,
that is, that a tender of the debt and interest secured
by a mortgage on real estate after forfeiture releases

the lien of the mortgage. This is the rule announced in New York after numerous conflicting decisions, the leading case being that of *Kortright v. Cady*, 21 N. Y. 343. The New York rule has been followed in Michigan. *Potts v. Plaisted*, 30 Mich. 149; *Van Husan v. Kanouse*, 13 Mich. 303; *Caruthers v. Humphrey*, 12 Mich. 270; *Moynahan v. Moore*, 9 Mich. 9. In New Hampshire in *Bailey v. Metcalf*, 6 N. H. 156; *Robinson v. Leavitt*, 7 N. H. 73. In South Carolina in *Salinas v. Ellis*, 26 S. C. 337. A like ruling was made by the supreme court of the United States in *Railroad v. Soutter*, 2 Wall. 510. The New York rule has also been followed in this state.

In *Olmstead v. Tarsney* (1879), 69 Mo. 396, there were cited a number of decisions of the courts of different states holding diverse views of the effect of a tender of a debt and interest secured by mortgage after forfeiture on the lien created thereby, but the court did not pass on the question.

The question was before the court again in *Thornton v. Bank*, 71 Mo. 221, and it was held that a tender of the debt and interest secured by a mortgage on the day the debt became due, released the property from the mortgage lien.

In *Philips v. Bailey*, 82 Mo. 639, it was held that a tender before sale of the interest due only, is sufficient to prevent a sale by a trustee under a deed of trust although it provided that in case of failure to pay the interest as it becomes due, the entire debt, principal and interest, should become due and the property be sold to satisfy the same.

That case was followed and approved in the recent case of *State ex rel. v. Ross*, 136 Mo. 259, and also *Wolz v. Parker*, 134 Mo. 458.

So that whatever the law may be elsewhere it seems that the tendency of the decisions of this court

is to the effect that a tender of the debt and interest secured by a mortgage, though made after default, destroys the mortgage lien.

This rule seems to be recognized in those states in which the mortgage is only a lien.

In this state while a mortgagor, after condition broken, may recover in ejectment the mortgaged premises if the debt, interest and costs be not paid before judgment, yet when paid or tendered, even after suit brought and before judgment, the lien is extinguished and operates to defeat his right to the possession, and no reconveyance is necessary, in order to re-invest in the mortgagor the possession or title. When the tender is made the mortgagor's right to possession is terminated.

We come now to the question as to whether or not there was in fact a legal tender made.

The tender made by plaintiff, in order to destroy the lien of the mortgage, must have been unconditional for the full amount of the debt and interest, and costs attending the former attempted sale by the acting trustee.

Upon this branch of the case the court found that the amount of the tender to Tyler was the full amount of the debt and interest, exclusive of the costs incurred in the advertisement and sale of the land by the trustee, which amounted to about $45.75.

There was then according to the finding of the court, no tender of the full amount actually due at that time, which of itself is fatal to plaintiff's right to recover in this action.

Moreover, when the tender was made to Tyler as the agent of the defendant company he only asked for time to communicate with his client who lived some forty miles distant with respect thereto, in order that he might act with authority and advisedly, but plaintiff

declined to grant him that delay, and refused to give him longer time than noon the same day, which seems to have been somewhat arbitrary, unreasonable, and wanting in good faith.

Furthermore, on the day next following, Tyler met plaintiff's attorney who had made the tender, and stated to him that in order to avoid further trouble he would accept the amount offered to him the day before, and satisfy the record of said deed of trust.  To this proposition plaintiff's attorney declined to accede.

The request of Tyler for so short a time in which to communicate with his client before accepting or refusing the tender made by plaintiff was not unreasonable, and when on the following day he informed plaintiff's attorney that the tender would be accepted the latter should have made the tender good.

From these considerations it follows that the judgment should be affirmed, and it is so ordered.  GANTT, P. J., and SHERWOOD, J., concur.