KNOLLENBERG, Appellant, v. NIXON et al.

In Banc, January 26, 1903.

1. **Mortgage:** RIGHT OF OWNER OF EQUITY OF REDEMPTION TO PAY OFF. One who acquires the equity of redemption of the mortgagor by a trustee's deed at a foreclosure sale of a second deed of trust, acquires the same right to pay off the notes secured by the first deed of trust that the mortgagor had.

2. ———: ———: EFFECT OF TENDER. A tender before sale by the mortgagor, in lawful money, of an amount sufficient to pay the mortgage debt, principal and interest, and the costs then accrued in foreclosure proceedings, does not extinguish the lien, nor authorize an equity court to decree the mortgage released. Its only effect is to stop the running of interest from the day of the tender. The only way to extinguish the lien is to keep up the tender, that is, to pay the debt.

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*J. J. Henderson* and *E. B. Kellerman* for appellant.

(1) Tender of the debt and interest secured by deed of trust, though made after default, releases the mortgage lien. Farmers' Fire and Loan Co. v. Edward, 26 Wend. 541; Kortright v. Cady, 21 N. Y. 343; Thornton v. Bank, 71 Mo. 221; State ex rel. v. Ross, 136 Mo. 259; Phillips v. Bailey, 82 Mo. 639; 4 Kent's Com. (10 Ed.), 228; McClung v. Trust Co., 137 Mo. 106. (2) Plaintiff was not bound to bring the money into court. The proposition would doubtless be a correct one in an action at law to recover a debt, but it is not applicable in a case of this kind, where no recovery of money is asked on either side, but equitable relief. Whelan v. Reilly, 61 Mo. 565; Quinn v. Britain, 1 Hoff. Ch. 353; Bishop of Winchester v. Paine 2 Vesey 194.

*J. P. Nixon* for respondents.

(1) Plaintiff Knollenberg having accepted a deed to the land in controversy from his attorney, Henderson, in which it is recited that "he assumes and agrees to pay J. P. Nixon two hundred dollars and one year's interest on the mortgage" on said land, subjected himself to a liability to the holder thereof for said amount, which might be enforced in a personal action. Saunders v. McClintock, 46 Mo. App. 216; Heim v. Vogel, 69 Mo. 529; Fitzgerald v. Barker, 85 Mo. 13. (2) "When a debt is secured by a deed of trust a tender after maturity of the debt so secured does not extinguish the debt or mortgage lien nor operate to defeat a sale and a trustee's deed thereunder." Secs. 1564 and 1565, R. S. 1899; Landis v. Saxton, 89 Mo. 375; McGuire v. Brockman, 58 Mo. App. 307; Hudson v. Glencoe Gravel Co., 140 Mo. 103; Rupel v. Savings and Build-

ing Association, 158 Mo. 613; Kline v. Vogel, 90 Mo. 245.

BURGESS, J.—On April 8, 1892, one Clara B. Hoagland was the owner of the northwest quarter of the northwest quarter of section eleven, in township thirty-three, range sixteen, in Laclede county, at which time she was indebted to one Augustus Craemer in the sum of two hundred dollars, evidenced by her three promissory notes of that date, one for the sum of fifty dollars, due January 1, 1893, one for the sum of fifty dollars, due August 1, 1893, and one for one hundred dollars, due January 1, 1894, all bearing interest at the rate of eight per cent per annum from date. And for the purpose of securing the payment of said notes, Clara B. Hoagland, her husband, S. G. Hoagland, joining with her, on April 8, 1892, made and executed to one M. F. Kellerman, as trustee for the use of said Craemer, a deed of trust on said land to secure their payment.

On September 7, 1894, Clara B. Hoagland and her husband conveyed said land to M. M. Phillips, subject to said deed of trust to Kellerman, and for the balance of the purchase money, to-wit, sixty dollars, M. M. Phillips on the same day made, executed and delivered to S. G. Hoagland his promissory note, due one year after date with interest from maturity at eight per cent per annum, and, to secure the payment thereof, made, executed and delivered to one W. I. Wallace, as trustee for the use of said Hoagland, a deed of trust, dated September 14, 1894, on said land, which said deed of trust was duly recorded in said county. It specified that it was subject to the deed of trust made to Kellerman.

Said M. M. Phillips having failed to pay the said last mentioned note when the same became due, and, the conditions in said deed being broken, at the request of the legal holder and owner of said note, said W. I. Wallace, trustee, advertised said land for sale under said deed of trust according to the terms thereof, and on October 25, 1895, sold said land, and John J. Hender-

son, being the highest and best bidder, became the purchaser thereof and received a deed therefor from said trustee, which was duly recorded in the recorder's office of said county.

In the meantime, the defendant, James P. Nixon, had, by transfer, become the holder and owner of said three notes executed by said Clara B. Hoagland to said Augustus Craemer, and the defendant, Harvey Bowman, to-wit, on the 27th day of February, 1897, had purchased of A. M. Phillips, widow of M. M. Phillips, her equity rights in said land, receiving a quitclaim deed therefor, in which it is provided: "This deed is made subject to a deed of trust of two hundred dollars which grantee assumes."

On the 20th day of December, 1898, said John J. Henderson and wife sold and conveyed said land to the plaintiff, Frederick W. Knollenberg, by deed, subject to the deed of trust from Clara B. Hoagland to Augustus Craemer for $200, in which said deed it is recited that "the party of the second part [Knollenberg] on the accepting this deed, agrees to assume the payment of a mortgage to the amount of two hundred dollars in favor of J. P. Nixon and one year's interest on same."

Payments on said notes so held by respondent Nixon, as assignee, had been made from time to time, as follows:

By Clara B. Hoagland, the interest of said notes up to September 7, 1894; by M. M. Phillips, $10 November 25, 1895; $15 December 21, 1895; $10 September 5, 1896; and by the defendant Harvey Bowman, the sum of $100.

After plaintiff became the owner of said land, he being a resident of Quincy, Illinois, he addressed several letters to defendant Nixon, with notice to "return if not called for" on the back thereof, requesting him to furnish him the amount of the principal and interest due on said notes, as he desired to pay them off and clear up the title to said land. To these inquiries Nixon made no reply. The evidence shows that shortly after J. J. Henderson became the purchaser of said land he

addressed similar inquiries to said Nixon, informing him of his desire to pay off said debt and interest, and received no reply thereto. Afterwards, on the — day of February, Nixon, under an arrangement with said Bowman, knowing that both this plaintiff as well as said Henderson were ready to pay off his incumbrance on said land, without their knowing anything about it, advertised it for sale, under the Hoagland deed of trust, but advertised it to be sold by E. B. Kellerman instead of M. F. Kellerman.

On the day the land was so advertised to be sold, the plaintiff by his agent, J. J. Henderson, appeared and after vainly applying to said Nixon for a statement of the amount of principal and interest due on said notes, and announcing his wish to pay off the same, he then and there made to said Nixon in the presence of said Bowman a tender, and counted out and offered to pay him in lawful money of the United States the sum of two hundred and eighty-six and twenty-five one-hundredths dollars, in full payment of said notes and interest, demanded the surrender of the same and the release and discharge of said deed of trust, but said Nixon refused to receive the same and to surrender said notes and cancel said deed of trust. It is not pretended by defendant but that the said sum of $286.25 was in excess of the amount of principal and interest then due on said notes, but the excuse offered by Nixon for not accepting same was that he wanted his friend Bowman to have the benefit of the $35 paid by Mrs. M. M. Phillips on the notes.

The prayer of the petition is that the liens of said deed of trust on said land be declared to be released, that in the meantime said defendants be restrained and enjoined from exposing said land to sale under said deed of trust, and for such other and further orders, judgments and decrees in the premises as the facts demand, and for general relief.

The trial resulted in a judgment in favor of defendants, from which plaintiff, after motion for new

trial being presented and overruled, appeals.

As J. J. Henderson acquired all of the equity of M. M. Phillips in the land in controversy by purchase at the sale made by W. I. Wallace, trustee, on October 25, 1898, and had the legal title to said land subject to the deed of trust then held by defendant Nixon, when Knollenburg purchased from him, Henderson, it was subject to said deed of trust and he had the right to pay off the debt and interest to defendant Nixon who then held the notes secured by it and have the land released from the mortgage lien. There can be no question with respect to the right of Phillips to redeem the land at any time before its sale under the deed of trust, and as plaintiff acquired his interest in the land he acquired the same right that Phillips had. [Lapsley v. Howard, 119 Mo. 489; Wolz v. Parker, 134 Mo. 459.] And the evidence showed that plaintiff, before the institution of this suit, tendered to defendants Nixon and Bowman, who then held the notes as owners thereof, more than the amount that was due upon them and demanded the release of the deed of trust, but that they refused to accept the tender unless it was increased to a sufficient amount to include thirty-five dollars claimed to have been paid by Mrs. Phillips for the benefit of defendant Bowman. The evidence, however, to support this claim was very unsatisfactory, and was ignored by the court in estimating the amount due upon the notes at the time of the trial which was held by it to be sufficient to cover debt, interest and costs in advertising the land for sale.

The question then is with respect to the effect of the tender upon the lien of the deed of trust upon the land, that is, whether it released the lien or only stopped the running of interest on the notes secured by it.

In Thornton v. National Exchange Bank, 71 Mo. 221, it was held by this court in a *per curiam* opinion that the release of a deed of trust given to secure the payment of one-half of several notes held by different persons, executed by the mortgagor's husband and another person, to secure whose liability a similar deed

of trust was also given, was discharged as to one of such notes by the unaccepted tender of half of the amount of such notes.    That case is cited with approval in the subsequent cases of McClung v. Trust Co., 137 Mo. 106; and, in Campbell v. Seeley, 38 Mo. App. 298.    See also Crain v. McGoon, 86 Ill. 431.

But as to whether or not a tender of the amount due upon a debt secured by a deed of trust or mortgage upon real estate made after the debt becomes due and before sale of the property under such deed of trust, releases the mortgage lien or not, the authorities are in great conflict.    At common law the rule is that such tender does not discharge the mortgage lien, but stops the running of interest upon the debt from that time. [13 Am. and Eng. Ency. of Law, 873; 1 Jones on Mortgages (4 Ed.), sec. 892; 1 Pingrey on Mortgages, sec. 1112; McClung v. Trust Co., 137 Mo. 106, and authorities cited; Hudson v. Glencoe Gravel Company, 140 Mo. 103.]

But as a general rule in those States where the mortgage is only a lien, as in this State, the mortgagee, after condition broken, may recover in ejectment the mortgaged land if the debt, interest and cost be not paid before judgment, yet when paid, or tendered, even after suit brought if before judgment, the lien is extinguished and operates to defeat his right to the possession, and no reconveyance is necessary in order to reinvest in the mortgagor the title or right to the possession.    When the tender is made the mortgagee's right to the possession is terminated.    [Kortright v. Cady, 21 N. York 343; Potts v. Plaisted, 30 Mich. 149; Van Husan v. Kanouse, 13 Mich. 303; Caruthers v. Humphrey, 12 Mich. 270; Moynahan v. Moore, 9 Mich. 9; Bailey v. Metcalf, 6 N. H. 156; Robinson v. Leavitt, 7 N. H. 73; Salinas & Son v. Ellis, 26 S. C. 373; McCellan v. Coffin, 93 Ind. 456.]

In Kortright v. Cady, 21 New York, l. c. 366, it is said:    "The proposition, that a tender of the money due on a mortgage, made at any time before a foreclosure, discharges the lien, is the logical result of

premises which are admitted to be true. These are, that the mortgagor has the same right after as before a default to pay his debt, and so clear his estate from the incumbrance; and that payment being actually made, the lien thereby becomes extinct. We have, then, only to apply an admitted principle in the law of tender, which is, that tender is equivalent to payment as to all things which are incidental and accessorial to the debt. The creditor, by refusing to accept, does not forfeit his right to the very thing tendered, but he does lose all collateral benefits or securities. [3 Johns. Cas. 243; 12 J. R. 274; 6 Wend. 22; 6 Cow. 728; Coggs v. Bernard, 2 Raymond 916.] Thus, after the tender of a money debt, followed by payment into court, interests and costs can not be recovered. The instantaneous effect is to discharge any collateral lien, as a pledge of goods or the right of distress. It is not denied that the same principle applies to a mortgage, if the tender be made at the very time when the money is due. If the creditor refuses, he justly loses his security. It is impossible to hold otherwise although the tender be made afterwards, unless we also say that the mortgage, which was before a mere security, becomes a freehold estate by reason of the default. That this is not true, has been sufficiently shown. It is said that mortgagees will be put to great inconveniences if at any period, however distant from the time of maturity, they must know the amount of the debt and accept a tender on peril of losing their security. The force of this argument is not perceived. As a tender must be unqualified by any conditions, there can never be any good reason for not accepting the sum offered, whether it be offered when it is due or afterwards. By accepting the tender, the creditor loses nothing and incurs no hazard. If the sum be insufficient, the security remains. It is only by refusing, that any inconvenience can possibly arise. But, whatever may be the consequences of refusal, the creditor may justly charge them to his own folly.''

The question was first before this court in Olm-

stead v. Tarsney, 69 Mo. 399, wherein it is said: "A tender by the debtor to the mortgagee on the law day, will undoubtedly discharge the lien of the mortgage; and it has been repeatedly decided that a tender by the debtor to a mortgagee of the amount of his debt after the law day, at any time before foreclosure, will discharge the lien of the mortgage." But in Hudson v. Glencoe Gravel Co., 140 Mo. 103, it was held that a tender, after maturity of the debt secured by deed of trust on land, does not extinguish the lien. The same general rule was announced in McClung v. Trust Co., 137 Mo. 106.

Landis v. Saxton, 89 Mo. 375, goes further, and holds that in order to defeat the lien of a mortgage the tender must not only be made but must be kept up. That action was not, however, for the purpose of declaring a mortgage lien forfeited, but was for the purpose of having declared paid a note for the sum of $15,000 which plaintiff had executed to Paxton and secured by deed of trust upon real property, and plaintiff sued to have it declared paid and the deed of trust satisfied, upon the ground that all of the debt and interest had been paid prior to June 10, 1881, except $6,200, at which time plaintiff tendered to Paxton that sum, being, as he claimed, the balance due on said note, but which was refused by Paxton. The tender was not kept up. It was held under section 1008, Revised Statutes 1879, which provides that, "where tender and no deposit shall be made, as provided in the preceding section, the tender shall only have the effect, in law, to prevent the running of interest or accumulation of damages from and after the time such tender was made;" that the only effect of the tender, if sufficient in amount, was to stop the running of interest. The court said: "The tender can not have the effect to deprive the defendant of his security created by the deed of trust for so much as may be found due at the time the tender was made. Authorities cited do say that where a tender has been made of the amount due it discharges the lien, still, without regard to the statute, a court of equity would not

decree affirmative relief, such as the release or satisfaction of a mortgage or deed of trust or other lien without payment of the amount due at the date of the tender. A party who seeks equitable relief must do equity. Until plaintiff does make such payment he can not have the deed of trust declared satisfied as prayed for in his petition. [Tuthill v. Morris, 81 N. Y. 98; Cowles v. Marble, 37 Mich. 158.] But so far as this case is concerned, the statute before quoted is conclusive, and as before stated the only effect of the tender was to stop the running of interest."

To the same effect are Crain v. McGoon, 86 Ill. 431; Matthews v. Lindsay, 20 Fla. 962; Cowles v. Marble, 37 Mich. 158.

In Tuthill v. Morris, 81 N. Y. 94, it is said: "A party coming into equity for affirmative relief must himself do equity, and this would require that he pay the debt secured by the mortgage, and the costs and interest, at least up to the time of the tender. There can be no pretense of any equity in depriving the creditor of his security for his entire debt, by way of penalty for having declined to receive payment when offered. The most that could be equitably claimed would be to relieve the debtor from the payment of interest and costs subsequently accruing, and to entitle him to this relief, he should have kept his tender good from the time it was made. If any further advantage is gained by a tender of the mortgage debt, it must rest on strict legal rather than on equitable principles. The circumstance that a security has become or is invalid in law, and could not be enforced, even in equity, does not entitle a party to come into a court of equity, and have it decreed to be surrendered or extinguished, without paying the amount equitably owing thereon. Even securities void for usury would not be cancelled by a court of equity, without payment of the debt with legal interest, until, by statute, it was otherwise provided. This statute does not change the general principle of equity, but on the contrary recognizes it, by excepting cases of usury from its operation. On this ground, even

if the alleged tender could be sustained, the plaintiff was not entitled to a decree for the unconditional extinguishment of the mortgage.''

It thus appears that this court, with respect to the effect of a tender after due of a debt secured by a deed of trust or mortgage, adheres to the common-law rule, that is, its only effect is to stop the running of interest on the debt from that time, but that in pursuance of statutory enactment (secs. 2937, 2938, R. S. 1889), and upon principles of equity it has gone farther, and holds that in order that the tender may extinguish the mortgage lien it must be kept up (Landis v. Saxton, supra; Hudson v. Glencoe Gravel Co., supra), which is practically much the same thing as a bill in equity by the mortgagor or those holding under him to redeem.

It follows that there is no such thing in this State as the forfeiture of the lien of a deed of trust, or mortgage, by tendering the amount due which is secured thereby, although refused by the holder of the mortgage, but the only effect of such tender is to stop the running of interest after that time, unless the tender be kept up, which amounts to nothing more nor less than the payment of the mortgage debt, less the interest, from the time of the tender, for if by the tender the lien is forfeited, it is forfeited *eo instante* and can not be reinstated by keeping up the tender.

The judgment is affirmed.    All concur.