AT THE

### OCTOBER TERM, 1913.

---

### A. M. GRAY v. BERTHA GURLEY, Appellant.

#### Division Two, October 14, 1913.

1. **EJECTMENT: By Vendor: Failure to Pay Purchase Money: Dismissal: Costs.** If the vendor of land, sold under a written contract to defendant, the payments to be made by monthly installments, had been tendered all that was due him at a time when he did not possess the right to forfeit the contract and retake possession, then his suit in ejectment, brought under those circumstances, was premature, and upon its dismissal he was responsible for the costs therein.

2. ————: ————: ————: **Oral Agreement as to Costs: No Consideration.** And an oral agreement between the parties regarding the dismissal, being without consideration, did not relieve the vendor of the obligation to pay the costs of such premature suit.

3. ————: ————: ————: **Waiver.** A letter written by the vendor to the vendee, at a time when installments on the purchase price of land were due, in which he stated to the vendee, "Pay when you can and it will be all right," was an unconditional waiver of his right to forfeit the written contract of purchase, both as to the payments then due and those that might thereafter accrue, except upon a notice from him revoking his waiver and setting some other date for forfeiture.

(410)

4. ————: ————: ————: **Sudden Revocation of Waiver: Prior Tender.** Where an unconditional waiver of default in the payments due on the purchase of land has been made, the vendor cannot suddenly withdraw it and unconditionally declare the contract has already been forfeited; and a tender of the payments and interest then due, promptly made after such declaration, will defeat a forfeiture. The vendee having once been notified to pay when he could and it would be all right, the vendor should thereafter fix some definite time when he will declare a forfeiture unless payments are made.

5. ————: ————: ————: **Effect of Tender at Revocation of Waiver.** A tender of the balance due by the vendee when he is notified that a prior waiver is revoked, or promptly thereafter, does not pay the debt, but it relieves the vendee of the duty of making any further tender out of court, and from the payment of subsequent interest.

6. **FORFEITURE: Ignorant and Impecunious Vendee.** In forfeiting contracts for nonperformance, the facts that the vendee is ignorant, impecunious and sick should not be entirely ignored, though they alone will not prevent a forfeiture; but when the vendor has once unconditionally waived default, those things increase his duty to fix a new date within which payment may be made.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED (*with directions*).

*Moon & Moon* for appellant.

(1) Under the pleadings, law and evidence, judgment should have been for appellant, for the reason respondent failed to prove that he was entitled to the possession of the premises at the institution of this suit. Tarlotting v. Boken, 95 Mo. 544; Sec. 2382, R. S. 1909. (2) Under the present contract respondent is required to take two steps in order to terminate the tenancy: First, he must declare the contract forfeited and apply the payments as rent; second, he must then demand peaceable possession at some definite time. 1 Cyc. 56-G. (3) The contract makes seven per cent interest on all deferred payments the penalty for not

making payments promptly, not forfeiture. (4) Equity will not consider time as of the essence of a contract. And this is especially so where the parties themselves have not so construed the contract. Tetley v. McElmurry, 201 Mo. 393; Moberly v. Trenton, 181 Mo. 646; Sease v. Foundry Co., 141 Mo. 496; Watson v. Gross, 112 Mo. App. 620; 36 Cyc. 707, 717, 734. (5) Where time is of the essence of a contract it may be waived. Melton v. Smith, 65 Mo. 322; Scannell v. Soda Fountain Co., 161 Mo. 62; Mastin v. Grimes, 88 Mo. 485; 36 Cyc. 717, 734. (6) "If vendor objects to the tender at the time it is made on specific ground he waives possible objections to it on other grounds." 36 Cyc. 704-F. (7) No consideration is necessary to support a waiver. May also be waiver by conduct. Griffith v. Gillum, 31 Mo. App. 41; Tetley v. McElmurry, 201 Mo. 394; Polk v. Assurance Co., 114 Mo. App. 519; McCollum v. Fire Ins. Co., 61 Mo. App. 354; 36 Cyc. 717. (8) Equity abhors forfeitures, never aids forfeitures, and grants relief from them in all cases, except where it would be inequitable to do so. Tetley v. McElmurry, 201 Mo. 394. (9) Appellant having paid more than one-half the purchase price, and having tendered the balance with interest, and the respondent having failed to enforce a forfeiture according to the terms of the grant, justice, equity and good conscience demand that he accept the tender and execute a deed. O'Fallon v. Kennedy, 45 Mo. 127. (10) Assignee of vendee may enforce assignor's right to specific performance. Melton v. Smith, 65 Mo. 320; Majors v. Maxwell, 120 Mo. App. 281; 36 Cyc. 758.

*Hamlin & Seawell* for respondent.

If this court should consider the evidence is properly before it, we are satisfied that after examining the same the court will find that the trial court was right in its finding; and as the law in the case is well fixed, we will simply call the court's attention to the case

of Avery v. Railroad, 113 Mo. 561, on the point that ejectment is the proper remedy, and that the contract being forfeited by nonpayment of the payments, this is the proper action, and that under the facts in the case and the law, no demand is necessary before the bringing of the action.  Brooks v. Gaffin, 192 Mo. 253.

BROWN, P. J.—Ejectment for town lot; equitable answer; judgment for plaintiff; and defendant appeals.

Plaintiff vigorously assails appellant's printed abstract of the record, but, upon examination, we find that it contains all the pleadings, record entries, and a complete copy of the oral evidence.  While the abstract is not as complete in some respects as it ought to be, we do not deem it so defective as to preclude a review of the case upon the merits.

The following is a brief history of the transaction out of which this litigation arose:

In March, 1905, plaintiff sold to defendant lot 12 in Forest Home Addition to Springfield, Missouri, for $225, to be paid in monthly installments.

Between the date of said sale and June 15, 1906, defendant paid all of the purchase money for the above described lot except $146.35.

On said last named date the contract of purchase between plaintiff and defendant was voluntarily rescinded by mutual agreement, and plaintiff thereupon entered into the following written agreement to sell the lot to one Bertie Ritter, a sister of defendant, who was then living on the property with defendant:

> Springfield, Mo., June 15, 1906.
> This Agreement, Witnesseth:  That A. M. Gray has this day contracted with Bertie S. Ritter to sell to her Lot 12, in Forest Home Addition to the City of Springfield, Mo., on the following terms and conditions:  Ten dollars cash, the receipt of which is hereby acknowledged, and $136.45, to be paid in monthly payments of five dollars on or before the 15th day of each succeeding month, together with seven per cent interest, to be paid annually, on all deferred payments. It is hereby agreed that when payments amounting to one-

half the amount of this contract shall have been made, and in accordance thereto, then A. M. Gray, his heirs, assigns or executors, shall furnish an abstract showing a good title, together with a warranty deed, to said Lot 12, and take in lieu thereof notes for the portion, as per terms herein stated, secured by a deed of trust on the said Lot 12, Bertie S. Ritter hereby agreeing to pay all taxes for the year 1906 and thereafter. It is fully understood by both parties hereto that should the payments at any time prior to the execution of deed and deed of trust be not paid as per terms herein named, then all moneys paid shall be considered as rentals for said premises, and Bertie S. Ritter agrees to give peaceable possession thereto on demand of A. M. Gray, his heirs, assigns or executor.

Witness our hands and seals, the day above written.

> A. M. GRAY,
> BERTIE S. RITTER.

Witness to signatures: J. B. Easley.

It will be observed that by the foregoing contract Miss Ritter was given the right to acquire the lot in controversy by paying the balance of the purchase price which defendant originally contracted to pay.

Miss Ritter made her payments on the lot regularly until February, 1907, paying to plaintiff altogether $47.62, when she became sick and defaulted in her payments.

On March 23, 1907, in response to a letter from Miss Ritter announcing her sickness and inability to make her payments on the lot as they fell due, plaintiff wrote her as follows:

Miss Bertie Ritter:
Yours rec. Pay when you can & it will be all right.
> A. M. GRAY.

On June 17, 1907, plaintiff sent Miss Ritter the following statement:

Yours of 12 inst. rec.

June 15—there is 5 payments due .....................$25.00
"  " —interest on deferred payments due .......... 7.40

$32.40

Yours truly,
> A. M. GRAY.

Plaintiff testified that in June, 1907, he called on Miss Ritter and told her in the presence of defendant that she must make the payments or he would have to break the contract. He further testified as follows:

"Q. Then she and her father came to your store to see you about making payments? A. To see about making the payments.

"Q. Didn't they come there to talk about paying it all up and didn't they tell you they had the money for you? A. She came to the store the first time—

"Q. I say when she and her father came? A. No, sir.

"Q. They did not come to pay the money? A. They came there and said they would get the money after I had told them that I was not going to wait any longer; that I wanted the property.

"Q. They told you they would get the balance of the money and pay you, didn't they? A. Yes, sir.

"Q. You told them then you would not take it? A. I wouldn't take it.

"Q. And then in a few days, perhaps the same day, I came to your store with the money and the deed to the place? A. Yes.

"Q. And offered you the balance due? A. Yes, sir.

"Q. And you refused to take it? A. Yes, sir."

The exact date when the attorney for Miss Ritter offered to pay plaintiff the balance due on the lot is not made clear by the evidence. Miss Ritter was dead at the time of the trial. Her father testified that it was in the month of July, 1907, probably near the first of that month.

After refusing to accept the balance of the purchase money due on the lot in controversy, plaintiff instituted a suit in the circuit court to recover possession of the lot, but that suit was dismissed for reasons explained by plaintiff, as follows:

"Q. Then after that you instituted this suit that was dismissed in the circuit court here? A. Yes, sir.

"Q. Now, that case that was dissmissed in the circuit court, it was understood and agreed that you were to make a deed is the reason that case was dismissed? A. The reason that case was dismissed was upon advice of my counsel and yourself that morally I was under obligation—

"Q. That was the understanding, that you was to make a deed? A. Yes, sir."

Plaintiff's evidence further shows that about ten days after the suit was dismissed the defendant, through her attorney, tendered to plaintiff the balance due on the lot and plaintiff refused the same, and refused to make her a deed for the following reasons: (1) The costs of the suit had not been paid. (2) The tender was not made the day the suit was dismissed, or the day thereafter, which plaintiff contended was the time given defendant to make the payment. (3) Because plaintiff was under a contract to convey the lot to Miss Ritter and not to defendant. Plaintiff's evidence tends to prove that the defendant agreed to pay the costs of the suit that was dismissed, and that she failed to pay said costs.

In December, 1907, Miss Ritter conveyed to defendant all her interest in the lot in controversy. About one month thereafter she died.

The defendant's version of the interview between plaintiff and Miss Ritter when the plaintiff called at her home is as follows:

"Q. While your sister was gone to Iowa you remained in possession of these premises? A. Yes, sir.

"Q. Do you remember when she returned? A. July 3d of last year.

"Q. Did you see Mr. Gray on that day? A. Yes, sir.

"Q. Where? A. He stopped at the house.

"Q. You and your sister were there? A. Yes, sir.

"Q. What conversation did he have there with you folks in regard to the payment? A. He stopped there, and I told my sister Mr. Gray was out there, and I says, 'I expect he wants to see you.' She went to the door and so did I, and she stepped outside and so did I. We both stepped outside and he remained at the side of his buggy, and she told him she would get the money if she was able, but she said she was not able to work and did not know when she would be able. He says, 'That is all right,' and that is all that was said.

"Q. Did he or not tell her then that he wanted the money on the place? A. He did say so.

"Q. Did he tell her he did not want the money, but wanted the place? A. He says, 'It is all right.' She told him she would get the money if she could. She says, 'I am not able to work and don't know when I will be.' He says, 'You do look bad.' She says, 'I am sick,' and he says, 'You're looking bad.' He says, 'That is all right,' and that is all he said."

The plaintiff's evidence indicates that after the dismissal of the first suit nothing further was done by him towards securing possession of the lot in controversy until April 9, 1908, when he instituted an action of unlawful detainer against defendant. That action, however, was dismissed by the justice on the alleged ground that plaintiff failed to prosecute same with diligence.

On April 20, 1908, the plaintiff instituted this action of ejectment against defendant for the possession of the lot in controversy. Defendant filed her answer setting up the purchase of the property by her sister, Miss Ritter, the tender of the purchase money to plaintiff by Miss Ritter's attorney and plaintiff's refusal to accept same; the conveyance from Miss Ritter to de-

252 Mo.—27

fendant, and again offered to pay the balance of the
purchase money due defendant and prayed for equita-
ble relief.

The court gave judgment for plaintiff for one cent
damages and possession of the property, whereupon
defendant appealed.

## OPINION.

From the foregoing facts it is apparent that Miss
Ritter, and also defendant as her grantee, failed to
make the monthly payments on the lot in controversy
according to the contract of June 15, 1906.
Ejectment: About the only issue in the case is: Did
Waiver of
Purchase plaintiff waive his right to forfeit the con-
Money. tract and apply the payments already made
as rents on the property, and if such waiver was made
was it in force about July 1, 1907, when plaintiff ad-
mits that Miss Ritter's attorney tendered him the bal-
ance due?

We think the alleged oral agreement to make a
deed, entered into at the time the first suit was dis-
missed, may properly be left out of view altogether.
If plaintiff had been tendered all that was due him,
at a time when he did not possess the right to forfeit
the contract and retake possession of the property, and
had refused to receive the balance of the purchase
money under those circumstances, then said first suit
was improvidently brought and the plaintiff was re-
sponsible for the costs therein. An oral contract be-
tween the parties regarding its dismissal, for which
there was no consideration, would not change their sit-
uation. There is no doubt but what plaintiff pos-
sessed the right to forfeit the contract when the Feb-
ruary, 1907, installment of the purchase money became
due; likewise when the March installment became due,
but instead of declaring the contract forfeited and de-
manding possession when default was made in those

payments he wrote Miss Ritter: "Pay when you can and it will be all right." This was a strong unconditional waiver of his right to forfeit the contract, both as to the payments then due and also such as might thereafter accrue, except upon a notice from him setting some other date for forfeiture of the contract. In 39 Cyc., at page 1382, the law is announced as follows:

"While the vendor cannot rescind the contract of sale before default the right to rescind or forfeit the contract for default in performance by the purchaser must be exercised promptly or it will be deemed to be waived."

The failure of the vendor to exercise his right of forfeiture when Miss Ritter defaulted in the first payment, or the second payment, did not deprive him of the right to forfeit the contract on account of the non-payment of any subsequent installment of the purchase money. But in view of his letter informing her that she could pay at any time she was able, we think the circumstances of the case required him to revoke his waiver by fixing some other definite time when she would be required to make the payments for which she was in default before bringing suit for possession.

*Forfeiture: Waiver: New Date to be Fixed.*

The case of Tetley v. McElmurry, 201 Mo. 382, was an action of the same nature as this, but upon facts somewhat different. In that case, at page 394, our present Chief Justice announced the rule governing forfeitures in the following language:

"Forfeitures are abhorred, not favored, in equity. It has been said that courts of equity do not lend their aid to enforce them; at least, that courts of equity are slow to enforce forfeitures and will (if that construction be at all permissible) so construe a contract as to preserve rather than to disturb, a party's rights; that good conscience is the beacon light which points

the way out of a forfeiture; that while provisions
for forfeitures should not be abrogated, yet they should
be strictly construed, and never helped out by impli-
cation.''

There can be no reasonable doubt that the plain-
tiff's letter telling Miss Ritter that she could pay when
she could and it would be all right was a very broad
waiver, such as to lead her to believe that she would
not be dealt with harshly for failure to meet subse-
quent payments.

The plaintiff testified that he orally notified Miss
Ritter when he called at her house in June, 1907, that
''she must make the payments up or he would have to
break the contract.''

Defendant was present on that occasion and de-
nies that plaintiff made any such statement at that
time.  The statement which plaintiff sent to Miss Rit-
ter on June 17th tends to corroborate the defendant,
for the reason that that statement was furnished in
reply to an inquiry by Miss Ritter, and it merely states
the amount due, without containing even a request that
the same be paid.  Not one word is said in that state-
ment about a forfeiture.  If, when that statement was
sent, plaintiff had decided that he would not wait any
longer for the payments then due it would have been
very natural for him to have demanded that the amount
due be paid without further delay.

The first entirely satisfactory evidence we have
of the plaintiff's intention to forfeit the contract is
when Miss Ritter and her father called on him at his
store in July, 1907, at which time he did inform them
that the contract was already forfeited, and that he
would not take the money.  In view of plaintiff's prior
waiver this pretended forfeiture was too sudden and
unconditional.  Plaintiff admits that following this in-
terview at his store Miss Ritter, on the same day or
a day or two thereafter, tendered him, through her
attorney, all that was due on the contract.

There does not seem to be any hard and fast rule as to what will justify a forfeiture of a contract of purchase. In 39 Cyc., at page 1370, the following rule is announced:

"So, although there is no stipulation of the parties that time shall be of the essence of the contract, nor anything in the nature or circumstances of the agreement to make it so, yet it may be made essential by the proper action of a party not in default and ready to perform, if the other party is in default. Thus, if the purchaser, without excuse, fails to pay at the stipulated time, the vendor, being in no default, and able and ready to perform all then required of him by the contract, may notify the purchaser to pay within a reasonable time, or he, the vendor, will treat the contract as rescinded. The notice, however, to be effectual for the purpose must not be such as to work a *surprise* upon the opposite party, but must give him a fair opportunity to protect himself and comply with it."

The facts disclosed by plaintiff's letters, and by his own evidence, show that after default was made in the payment of the monthly installments he failed to give Miss Ritter, the grantor of defendant, notice of any definite date when he would forfeit the contract if she failed to meet payments. According to his testimony he simply called on Miss Ritter and told her she would have to make the payments or he would break the contract, without fixing any definite date when the payments should be made.

The evidence in this case shows that plaintiff was a merchant in Springfield, and that Miss Ritter and defendant were poor and ignorant, earning the money with which they paid more than half the purchase price of this lot by washing and other menial labor. It is true that poor people must comply with their contracts the same as those who are more fortunately situated; but in forfeiting contracts for nonperform-

ance the situation of the parties and the degree of their intelligence should never be entirely ignored; and the peculiar facts in this case demanded that the plaintiff, before forfeiting the contract, should have fixed a new date for doing so, and have notified Miss Ritter of his intention to forfeit the contract and treat the payments already made as rents on the property. We are not unmindful of the fact that the plaintiff was exceedingly lenient with defendant and her sister and suffered the payments to lapse for a period of five months, but if he had notified them that he would forfeit the contract on a certain date, instead of informing Miss Ritter that she could have practically all the time she needed, she could doubtless have sold her equity in the property, and thereby have protected herself; or she could have borrowed the money to meet the deferred payments by giving a mortgage on the property. It stands proven by the plaintiff's own evidence that very soon after he notified her that he would not wait any longer she made arrangements to meet all the deferred payments and caused the same to be tendered to plaintiff by her attorney. He had not at that time brought any suit, and simple equity demanded that he should have accepted the purchase money and interest when it was tendered, and given her a deed. It appears by the evidence that, after the ineffectual effort of Miss Ritter to close up the contract by tendering the balance of the purchase money about July 1, 1907, the plaintiff prosecuted two unsuccessful suits against her, but we are unable to see how that places her, or the defendant as her grantee, in any more unfavorable position than she was on the day the balance of the purchase money was tendered. Neither Miss Ritter nor the defendant were required to pursue the plaintiff from day to day with the purchase money in hand; but it was his duty at all times, after he refused to accept the balance due, to

tender a deed and demand payment of the remainder
due before bringing suit for possession. In 39 Cyc.
1372, the following rule of law is announced:

"Where the vendor tenders a deed and demands
payment when it is due and payable, and the purchaser
fails or refuses to pay the purchase money, the ven-
dor may elect to declare the sale rescinded."

The mere tender of the balance of the purchase
money by Miss Ritter through her attorney did not pay
the debt, but we think it relieved her of the duty of
making any further tender out of court, and also from
the payment of interest. [Deichmann v. Deichmann,
49 Mo. 107; McGuire v. Brockman, 58 Mo. App. 307;
Ruppel v. Building Association, 158 Mo. 613.]

We find that the ends of justice will be subserved
by reversing the judgment of the trial court and di-
recting it to enter a judgment divesting the plaintiff
of title to the town lot in controversy, and investing
said title in defendant; provided she shall, in pursu-
ance of her tender heretofore made, deposit with the
clerk of the circuit court of Greene county, Missouri,
within twenty days after the filing of this mandate with
said clerk, the amount of principal and interest which
she owed plaintiff on July 1, 1907; said deposit when
so made to be paid to the plaintiff on demand. It is
so ordered.

*Faris* and *Walker, JJ.,* concur.