PETER MENDELL, Respondent, v. CHARLES M. HOWARD, et al., Appellants.

Kansas City Court of Appeals, December 2, 1918.

1. ENCUMBRANCE: Tender: Ownership: Payment. A creditor whose claim was allowed in the probate court sought to have his judgment made a lien against land encumbered by two deeds of trust, and he offered in his petition to pay the notes secured by these

deeds, but he did not deposit his tender. The court rendered judgment for him conditioned that he pay the notes and interest "as of the day" he instituted his action. He did not pay these notes for about six years. It was *held* that he did not become the owner of the notes until the day he paid them, and that he was not entitled to interest except from that day.

2. **TENDER: Deposit in Court: Interest.** A tender of the sum due on indebtedness secured by a deed of trust, unaccompanied by a deposit in court, will have the effect of stopping the interest only.

3. **TENDER: Deposit in Court: Discharge: Debt: Security.** A tender in a pleading of the sum due on an encumbrance without keeping it good by a deposit in court will not discharge either the debt or the security.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*John H. Crain* and *M. T. January* for appellants.

*W. M. Bowker* for respondent.

ELLISON, P. J.—This case stands for itself and another wherein John A. Silvers is plaintiff against these defendants. The two involve the same questions and grow out of the same transactions, and they were consolidated in the circuit court and tried together. Plaintiff Mendell is a judgment creditor, with a junior lien on certain lands. He seeks to recover from defendants certain money claimed to be a surplus left in the hands of defendant January as trustee in a sale under a prior deed of trust.

Plaintiff Silvers seeks to recover the remaining part of the surplus by reason of being the owner by purchase at a foreclosure sale conducted by defendant January as trustee.

The judgment was for plaintiffs in the trial court.

The matters out of which the case grew are lengthy and greatly involved, much of which need not be noticed here. One Zweigert once owned a large tract of land in Vernon county. He died owing defendant Howard

$7000, which was allowed against his estate in the probate court. He had given a deed of trust on the, land to secure an indebtedness of $8000. Before his death he made a voluntary deed to the land to his daughter and she gave a subsequent deed of trust on it to secure $2911, to a bank at Rich Hill, Missouri.

He also was indebted to plaintiff Mendell in the sum of $1800. This was allowed against his estate and afterwards in an action in the circuit court, it was made a lien on such real estate subject to the deeds of trust. After Zweigert's death the bank bought the first deed of trust securing the debt for $8000 and took an assignment of it. The bank then had its deed of trust for $2911 foreclosed and John A. Silvers (plaintiff in the other suit) became the purchaser of the land at the foreclosure sale.

After defendant Howard had his claim of $7000 allowed against Zweigert's estate he brought suit against Silvers, Zweigert's daughter, the Bank and this plaintiff, wherein he asked that his judgment of allowance be declared a lien on the land mentioned, and he offered in his petition, to pay to the bank the amount of the two notes, in the deeds of trust then held by the bank, but he did not keep such tender good by deposit. He lost the case in the circuit court, but on appeal to the Supreme Court he was successful and that court directed that "the case should be reversed and remanded with directions to the trial court to enter a decree setting aside the conveyance from Henry Zweigert to Lizette Zweigert of the lands in controversy and decreeing plaintiff's judgment to be a lien upon said lands and setting aside the foreclosure sale and the trustee's deed to Silvers, upon payment to the defendant bank of the principal and interest due upon the two Zweigert notes as of the date at which this suit was brought and that defendant bank upon said payment assign to plaintiff said notes and deeds of trust securing them, and for costs."

This judgment of the Supreme Court was rendered in 1917, and in compliance therewith defendant Howard,

on the 15th of September of that year paid to the bank the amount due on the two deeds of trust to that date which, with the $915 interest due when he brought his suit, amounted to $10,911.65, and the bank assigned the two notes and deeds of trust to him. Defendant Howard then immediately directed January, the trustee, to foreclose the deed of trust securing the note for $8000. January sold it on the 15th of October, 1917, and Silvers became the purchaser for $27,300 which sum he paid to January.

It is thus seen that though the Supreme Court set aside Silvers' purchase under the deed of trust for $2911 he again became the owner of the land by purchasing under this last sale. Silvers paid to the bank all interest due on the two deeds of trust except the $915 paid by defendant Howard when the bank assigned to him as stated above.

This controversy arises over the disposition which January made of the $27,300 paid to him by Silvers. No question is made on account of January's payment of court costs, costs of foreclosure and defendant Howard's judgment for $7000 and interest; nor is any question made regarding January paying Howard the amount of the principal of the two deeds of trust, and $915 interest due before Howard's offer, which Howard paid the bank when the latter assigned them to him as directed by the Supreme Court. The only objection is on account of his payment to Howard out of the surplus in his hands, interest on the debts secured by these deeds of trust from the first of November, 1911, the day he instituted his action, until the 15th day of September, 1917, the day he paid the bank, amounting, at 8 per cent, to $5458.69. The theory of defendants is that the offer made by Howard in his petition, though unaccompanied by a deposit in court, itself, to use words of counsel, "is a sufficient tender to effect redemption," and therefore Howard became the owner of the two deeds of trust and entitled to the interest thereon between the date of his tender and the day he paid them to the bank. It is also their theory that the terms

embodied in the judgment of the Supreme Court made Howard the owner of the notes when he filed his suit on the first of November, 1911. The theory of plaintiff is that Howard's mere offer to pay did not transfer the deeds of trust to him, but merely discharged him from the payment of interest after his offer, and as he has not been required to pay any interest since his offer, he had no right to receive interest out of the surplus in January's hands.

The rule in this State is that a tender, without payment or deposit in court for the creditor, will not discharge the obligation. Thus, if one merely offers in his pleading to pay a secured debt, he does not discharge the debt until he actually pays it, or else deposits in court the sum due. [Landis v. Saxon, 89 Mo. 375 (specially approved repeatedly since); Long v. Abstract Co., 252 Mo. 158; Knollenberg v. Nixon, 171 Mo. 445; McGuire v. Brockman, 58 Mo. App. 307.]

A creditor would be put to great hazard if his refusal to accept a mere offer would discharge the debt. That rule would substitue an offer for payment. So if the debt is not discharged by an offer, neither is the security released. If the tender is accompanied by a payment into court it is a release of the security, since the creditor has not been put to the hazard of losing his claim outright, for he is at liberty to change his mind and accept it at any time; and if he loses in court, the amount of his claim is there for him. [Crain v. McGoon, 86 Ill. 431.]

But the immediate question before us relates to interest instead of the debt itself. In many of the cases the expression is used that to have the effect of stopping interest alone, the tender must be kept good, as by a deposit of the sum tendered. It is so remarked in Ruppet v. Mo. Guar. Ass'n, 158 Mo. 613, 622. It is so stated in Parker v. Beasley, 116 N. C. side page 1, and a number of other cases cited on side page 7. In other cases the statement is found that a mere tender without being kept good by a deposit, while it will not

discharge the debt or the security, will stop interest. In this State we have the following statute (Sec. 2281, R. S. 1909): "Where tender and no deposit shall be made, as provided in the preceding section, the tender shall only have the effect, in law, to prevent the running of interest or accumulation of damages from and after the time such tender was made." And it has been held by our Supreme Court, in obedience to such statute, that a tender, without deposit of the sum tendered, will stop interest, but will leave the principal unaffected. [Landis v. Saxon, 89 Mo. 375; Knollenberg v. Nixon, 171 Mo. 445, 455.]

But it is recognized in several (if not all) of the foregoing cases that in any event if the party seeking relief desires the cancellation or assignment to himself of a mortgage, the courts will not grant him relief except upon the equitable ground that he pay to the holder of such security the sum due thereon. And so when Howard prosecuted his action to have his judgment declared a lien on the land, and the deeds of trust assigned to him, the Supreme Court, in recognition of the equity rule just stated, rendered the judgment and gave the direction we have already quoted, requiring him to pay off the debts secured by the two deeds of trust. [Howard v. Zweigert, 197 S. W. 46.]

It will be borne in mind that while Howard made an offer to pay the notes in his petition, he did not pay, nor did he carry out his offer by depositing the money in court for the defendants whenever they chose to accept it. He has therefore not lost the use of the money he thus offered. And notwithstanding he has had the profit of that use for the six intervening years, he desires to exact interest on the amount he should pay, to the prejudice of these plaintiffs, thereby, in effect, compelling the notes to yield up interest a second time for the same period, in order that he may be paid what he has not earned. The meaning of the direction given in the judgment of the Supreme Court was not, of course, that Howard should be paid interest his money never earned. Interest due after he brought

his action was paid to the bank by Silvers.   To now pay it over again to Howard would be a simple gift; for he had not invested or used a farthing of his money until the 15th of September, 1917.   Under the direction of the Supreme Court, he was not to become the owner of the notes until he paid them, and that did not occur until that day.   That part of the direction that the bank should be paid the principal and interest due on the two notes "as of the date at which this suit was brought," was inserted in the judgment merely as protective, in that it stopped interest as against him. It prevented interest being collected from him after that day, *but it did not authorize him to collect unearned interest from others.*   Interest due him could not begin to run until he had laid out his money by paying the notes to the bank, for prior to that time he had not parted with any thing which could earn interest.

The trial judge took the right view of the case and the judgment will be affirmed.   All concur.