Beulah WILLIS, Plaintiff-Respondent,

v.

AMERICAN NATIONAL LIFE INSUR-
ANCE COMPANY, Defendant-
Appellant.

No. 7426.

Springfield Court of Appeals.

Missouri.

Jan. 28, 1956.

Not to be published in State Reports.

Karl Blanchard, Joplin, Dibrell, Dibrell & Greer, Galveston, Tex., and Seiler, Blanchard & Van Fleet, Joplin, of counsel, for defendant-appellant.

Coyne & Patten, Joplin, for plaintiff-respondent.

RUARK, Judge.

This is a suit which concerns the right of an insured to collect attorney's fees by reason of vexatious delay. Plaintiff, now respondent, secured a verdict for $2,-294.27 on the policy and $764.76 attorney's fees, which last amount was reduced by remittitur to $700.

Prior to April 27, 1954, plaintiff held a policy of insurance (face amount $2,294) with defendant on the life of her son, Billy Ray Willis. The policy contained a provision that suicide within two years from date of issue would limit any benefit to the return of premiums paid. On that day Billy Ray came to his death. Shortly after the funeral a Mr. Woods, who is identified simply as "an agent," who plaintiff said was "one of the men down to the office," came to her home and helped her prepare her proof of death. This proof, together with the policy, was forwarded to the home office of defendant at Galveston, Texas, and it is stipulated that it reached such home office on May 13, 1954. Cause of death listed in the proof was "suicide." On May 28 or May 29 following, one Mr. Tutt, who identified himself as "district manager" of defendant at Joplin, called upon plaintiff at her home and told her, "Mrs. Willis, I have bad news for you. The company has refused to pay. You haven't had the policy

two·years and it was suicide." Plaintiff testified that she then informed Tutt she was going in the morning and employ an attorney, that she didn't believe her son had killed himself; and Tutt told plaintiff he didn't blame her, and for her to do whatever she thought best. In that conversation plaintiff requested the return of her policy and Tutt told her he would have to write and ask the company for it.

On the next day plaintiff went to the office of Coyne & Patten, attorneys, employed them to represent her in her case against the defendant, and entered into an arrangement whereby she was to pay her attorneys a contingent fee of one-third. On that same day Mr. Patten wrote a letter addressed to defendant at First National Bank Building, Joplin, Missouri (evidently the office of the district agent) which informed of the employment, requested the return of the policy to the attorneys so that suit might be brought and directed that any settlement be negotiated through the office of the attorneys. On or about June 1, Patten phoned Tutt's office and asked for the correct amount due on the policy. On this occasion he talked with Tutt, who told him (Patten) that "the company" had instructed him not to pay the amount of the policy "and that was all there was to it." In that conversation Patten informed Tutt of the Missouri statute Section 376.620 RSMo 1949, V.A.M.S., which excludes suicide as a defense except where such is contemplated at time of issuance. Tutt said he didn't know about it.

On June 4, Tutt called plaintiff and she referred him to Patten. Tutt then called Patten and informed him that the company had decided to pay the face amount of the policy and he had received a draft in such amount which he offered to deliver. Patten then told Tutt that plaintiff had been required to incur attorney fees and expense without good cause and "I expected his company to adjust the attorney fees." Tutt responded that he had no authority except to offer the face of the policy, and Patten said, "I told him to send the check back and we would bring a lawsuit. We

would see if the company would pay our fees."

Some time later, probably the morning of June 7, Tutt called Patten and, according to Patten, wanted to know when suit was going to be filed and said he wanted to send the suit papers and check back (to the home office) at the same time. According to defendant's witness Tutt, he (Tutt) had been instructed in a telephone conversation with his home office that morning, and he told Patten that the company did not feel like they would pay any more than the face of the policy and asked him whether suit had been brought, that the home office had instructed him to forward any suit papers to it immediately. He said Patten told him no, there had been no suit filed, "but asked me if today would be soon enough and I told him that would be all right with me." The suit was filed June 7.

It was stipulated that tender of the face amount of the policy was made on June 4 and again on June 7.

Plaintiff's petition charged that defendant was a corporation licensed to do business in the State of Missouri; set up the issuance of the policy, the death of the insured, the proof of death and demand for payment for the face amount of the policy, "but plaintiff says that the same has not been paid to her"; that after "due notice and all necessary papers to make a demand under said policy" defendant notified plaintiff it was not liable and refused payment and that said refusal was vexatious and without reasonable cause, by reason of which plaintiff was entitled to damages of $229.60 and reasonable attorney's fees in the sum of $750. The prayer was for a total of $3,275.60. The amended answer admitted certain portions of the petition, including that which charged defendant as a corporation licensed to do business in the state, and stated affirmatively that proof of death was received May 13; admitted demand for the face amount of the policy and pleaded tender of such amount on June 4 and June 7 (later stipulated), admitted the sum of $2,294.27 was due, set up demand of an undertaker to a portion of the pro-

ceeds (for an interpleader not in question here) and tendered the sum admitted to be due into court.

Defendant-appellant's assignment number 1 is refusal to direct a verdict, based on the proposition that a tender of the face amount of the policy prior to the actual filing of suit precludes any recovery for attorney's fees.

Attorney's fees for vexatious delay are allowed by two statutes. RSMo 1949, Section 375.420 RSMo 1949, V.A.M.S., is the old act (see R.S.Mo.1866, p. 402) which has come down with various amendments to its present form. It has rather general application. Section 375.168, V.A.M.S., is of recent origin and is limited. See S.B. 182, Laws of 1951, pp. 276, 280. RSMo 1949, Section 375.160 RSMo 1949, V.A. M.S., was applicable solely to insurance companies not incorporated or authorized under the laws of the state and provided that those doing business herein should be deemed to have appointed the Superintendent of Insurance as agent for service, and set forth a method of service. The act of 1951 which repealed 375.160 enacted in lieu thereof ten new sections, 375.160–375.169 inclusive, all of which deal with unauthorized insurance companies. Section 375.168 of this new act provides in substance:

"In any action * * * against any insurance company * * * upon any contract of insurance issued or delivered in this state to a resident of this state, * * * if such insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of such action * * * to make payment * * * and it shall appear * * * that such refusal was vexatious and without reasonable cause, the court or jury may. * * * allow the plaintiff damages * * *" as provided in section 375.420.

The title to the act of 1951 limits the application to companies not authorized under the laws of this state. The petition charges and the answer admits that defendant "is a corporation duly organized and licensed to do business in the State of Missouri," and this would seem to exclude the defendant from that class of persons to whom section 375.168 is applicable.

And we think there can be no recovery under this section for another reason. It is stipulated that the notice and demand first reached defendant on May 13 and that tender of the face amount of the policy was first made on June 4, a lapse of some 22 days.

■ It is not contended, nor can we find any evidence, that the "man from the office" who helped plaintiff prepare her claim for benefits was such an agent or officer who could bind the company by receiving notice or demand (if it was such in this case). In fact, the only evidence on the question at all was in reference to the authority of the "district manager," and he seemed to have no authority in reference to the settlement, payment or adjusting of claims. An agent has no authority to bind his principal unless the notice or knowledge is in reference to the particular thing he is authorized to do. State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 262 S.W. 43, 44; State ex rel. John Hancock Mutual Life Ins. Co. v. Hughes, Mo.Sup., 152 S.W.2d 132, 135; West's Missouri Digest, Principal and Agent, ■

■ The plaintiff-respondent contends that, by the refusal to pay, the defendant had waived the 30-day waiting period and that plaintiff was not precluded from relying on sec. 375.168. To sustain this contention she cites Martin v. Continental Ins. Co. of City of New York, Mo.App., 256 S.W. 120; Roberson v. Brotherhood of Locomotive Firemen, etc., 233 Mo.App. 159, 114 S.W.2d 136; and State ex rel. Metropolitan Life Ins. Co. v. Allen, 339 Mo. 1156, 100 S.W.2d 487. None of these suits were brought under 375.168. The Martin and Metropolitan cases were situations where the policy provided for a waiting period after the occurrence which made the benefits payable, and the Roberson case was one in which the insured was required

to first pursue his remedy through the various procedures of the fraternity. In these cases it was not a question of a *right to receive* the benefits provided, but whether the suit was premature. The insurer violated the contract by refusing to pay and therefore waived and could not rely upon that portion of it which did not permit the enforcement of the remedy. In Roberson v. Brotherhood, 114 S.W.2d loc. cit. 141, the court quotes Young v. Pennsylvania Fire Ins. Co., 269 Mo. 1, loc. cit. 12, 187 S.W. 856, 858, " 'The question of a premature suit is in the nature of a plea in abatement, and not a plea in bar.' " In the instant case we are not concerned with a waiting period provided in the policy, but whether or not a cause of action (for vexatious delay), created by statute, existed prior to the lapse of time provided by the statute. The section provides in unmistakable language that "if such insurer has *failed or refused for a period of thirty days* after due demand therefor prior to the institution of such action," recovery may be had for damages and attorney fees. Until this period expired no right to damages or attorney fees existed, and damages and attorney fees are what we are here concerned with. The vexatious refusal to pay is the laying of the egg; thereafter a period of incubation for 30 days is required before the chick can pip the shell and emerge as a live cause. For these reasons we believe section 375.168 is of no use to plaintiff in her claims.

There remains the more difficult question of whether recovery could be had under section 375.420. This section provides that in any action against any insurance company to recover the amount of any loss under a policy "* * * if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages * * * and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum * * *." We think our question is, did plaintiff have a cause of action for attorney's fees *at the time suit was filed?*

It is not contended that this was not a Missouri contract. The application, taken in Joplin, provided that the policy would be construed according to the laws of the state where such application was written.[1] The provisions of the statute therefore became as much a part of the contract as the printed portions thereof.[2] This has been held to be a penal statute, "highly penal," it is sometimes said, and is therefore to be strictly construed.[3] But the expression "strict construction" has been flung about rather loosely. A work horse definition given by Black's Law Dictionary, p. 1127:

"Construction of a statute or other instrument according to its letter, which recognizes nothing that is not expressed, takes the language used in its exact and technical meaning, and admits no equitable considerations or implications."

has been approved.[4] The penal provisions can be given "no broader application than is warranted by its plain and unambiguous terms."[5] The statute must be applied only to such cases as come clearly within its pro-

1. See Limbaugh v. Monarch Life Ins. Co., Mo.App., 84 S.W.2d 208; Weed v. Bank Savings Life Ins. Co., Mo.App., 24 S.W. 2d 653.

2. 46 C.J.S., Insurance, § 1407, p. 724; Appleman on Insurance, vol. 3, sec. 1601, p. 197; Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 295, 127 A.L.R. 163; Evans v. Equitable Life Assur. Soc., Mo.App., 109 S.W.2d 380; Metropolitan Life Ins. Co. v. Siebert, 8 Cir., 72 F.2d 6.

3. Howard v. Aetna Life Ins. Co., 350 Mo. 17, 164 S.W.2d 360, 366; Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349; Young v. New York Life Ins. Co., Mo. App., 221 S.W.2d 843; but see Tabor v. Ford, Mo.App., 240 S.W.2d 737, loc. cit. 740.

4. Priest v. Capitain, 236 Mo. 446, 139 S.W. 204, 209.

5. City of Charleston ex rel. Brady v. McCutcheon, 360 Mo. 157, en banc, 227 S.W.2d 736, 738.

visions and manifest spirit and intent.[6] "* * * it is not to be regarded as including anything, not within its letter, as well as its spirit, which is not clearly and intelligibly described in the words of the statute, as well as manifestly intended by the Legislature."[7] An expression which we believe worth quoting is:

"By the expression 'strict construction' is meant that the scope of the statute shall not be extended by implication beyond the literal meaning of the terms employed, and not that the language of the terms shall be unreasonably interpreted. Courts should neither enlarge nor narrow the true meaning of penal statutes by construction, but should give effect to the plain meaning of words and where they are doubtful, should adopt the sense in harmony with the context and the obvious policy and object of the enactment." [8]

Strict construction becomes a one-way street when the sovereign is applying the lash to the malefactor; in that situation "* * * where there is fair room for doubt as to whether the thing complained of comes within the scope of its condemnation, such doubt is to be resolved in favor of the defendant." [9] But in the ordinary case it "limits the application of the statute by the words used. It places no greater burden on one party litigant than on the other; both must comply with the terms of the statute." [10] The Supreme Court, en banc, in Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, gathered the expressions from the cases, the cumulative effect of which is to demonstrate that statutes may be partly remedial and partly penal, that the rule of "strict construction" is not a precise but a relative expression and

has lost much of its force and importance in recent times. This court concludes with the statement, 66 S.W.2d loc. cit. 925:

"The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and 'the manifest purpose of the statute, considered historically,' is properly given consideration." (Citing cases.)

Our conclusion is that there has been so much variety in the courts' interpretations of their own phrase, "strict construction," that its meaning is not fixed and, as said in In re Duren, 355 Mo. 1222, 200 S.W.2d 343, 353, 170 A.L.R. 391:

"* * * our courts are not wedded to the doctrine of 'strict' and 'liberal' construction of statutes. They seek to arrive at the intention of the Legislature as disclosed, in part at least, by the objectives of the legislation."

Certain it is that in construing this, which is said to be a penal statute, we must look to its purpose and the object which the legislature sought to accomplish. Appleman on Insurance, vol. 3, sec. 1601, p. 196; and

"The obvious purpose of the statute, Mo.R.S.A. § 6040, is to correct the evil of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of his claim".[11]

"The purpose of the law is to force prompt payment of such losses, after the lapse of a reasonable time, to enable the company to ascertain good

6. Eddington v. Western Union Tel. Co., 115 Mo.App. 93, loc. cit. 98, 91 S.W. 438; Cowan v. Western Union Telegraph Co., 149 Mo.App. 407, 129 S.W. 1066, 1067.

7. State ex inf. Collins v. St. Louis & S. F. R. Co., 238 Mo. 605, 142 S.W. 279, loc. cit. 281.

8. Moore v. Western Union Tel. Co., 164 Mo.App. 165, loc. cit. 171, 148 S.W. 157,

loc. cit. 159; Abbott v. Western Union Telegraph Co., Mo.App., 210 S.W. 769.

9. City of St. Louis v. Triangle Fuel Co., Mo.App., 193 S.W.2d 914, 915.

10. Chrisman v. Terminal R. Ass'n of St. Louis, 237 Mo.App. 181, 157 S.W.2d 230, 234.

11. Bouligny v. Metropolitan Life Ins. Co., Mo.App., 179 S.W.2d 109, 112.

grounds, if any, for not meeting the demand".[12]

"The legislature * * * having in mind also the necessity of the prompt payment of the insurance money in very many cases, in order to provide the means of living of which the beneficiaries had been deprived by the death of the insured." [13]

We have not been cited to any case, nor in the time available to us have we been able to find one, which exactly decides whether or not, when the vexatious delay has occurred and because of this the insured has been compelled to seek counsel and go to expense in collection of his claim preparatory to the filing of suit, he may use the statute to recoup such expense if the insurer repents of its recalcitrance after the incurrence of the expense but prior to the actual filing of the suit. We are cited to Nielson v. American Union Life Ins. Co., 236 Mo.App. 497, 155 S.W.2d 515, but in that case the plaintiff contended for more than the court found was actually due on the policy, and after the defendant had offered the proper amount prior to trial it was held it should not be liable for the attorney's fee. A case almost "white horse" on the facts, under a somewhat similar statute, is that of Penn Mutual Life Ins. Co. v. Maner, 101 Tex. 553, 109 S.W. 1084, but in that case the court was able to evade the precise question by holding that the offer to pay the face amount was not sufficient as a tender. The court, however, did say, 109 S.W. at loc. cit. 1089:

"Therefore, upon the demand and failure of the company to make payment, the right to damages and attorney's fees accrued and became as much a part of the claim as the principal and the interest, and nothing done thereafter by the insurance company could divest that right."

Some cynic has written that "the law sometimes is one judge insisting on perpetuating the blunder of another judge." Since we are unable to find any previous blunders on this question, we are compelled to risk making our own in this instance.

■ The provision for attorney's fees is a matter of right connected with the performance of the contract, and not entirely of remedy, and such attorney's fees are a part of the insured's "recovery." Lowry v. Fidelity-Phenix Fire Ins. Co., 219 Mo. App. 121, 272 S.W. 79, loc. cit. 82, and cases cited; First National Bank v. Security Mutual Life Ins. Co., 283 Mo. 336, 222 S.W. 832, 838; Thompson v. Traders' Ins. Co., 169 Mo. 12, 68 S.W. 889, 893; Ayers v. Continental Ins. Co., Mo.App., 217 S.W. 550, 551; Johnson v. Universal Life & Accident Ins. Co., 127 Tex. 435, 94 S.W.2d 1145; Alliance Cooperative Ins. Co. v. Corbett, 69 Kan. 564, 77 P. 108, 111.

We are cited to Corder v. Morgan Roofing Co., 355 Mo. 127, 195 S.W.2d 441. The case is not applicable on the facts. It held that a garnishee could not recover attorney's fees because under the statute the beneficiary of the policy was the only person who could recover damages and attorney's fees, and this because the policy is payable to him and he alone has the right to sue on it. The opinion did state that attorney's fees are not a part of the insurance money *due on an insurance policy,* but we do not understand it to hold that they are not a part of the recovery which the insured may have by reason of the existence of the statute and the conduct of the insurer in reference to the policy. We think the statute, while penal, is at least partly compensatory in purpose; this purpose being to create a cause of action in the insured in order to save unto him the amount of expense necessary to collect upon a policy, the payment of which has been vexatiously refused, so that there will be no diminution of the sum actually to be received.

■■ When proof of death was made plaintiff became entitled to receive the

---

12. Missouri State Life Ins. Co. v. Lovelace, 1 Ga.App. 446, 58 S.E. 93, 102( interpreting the Missouri statute).

13. Fidelity Mutual Life Ass'n v. Mettler, 185 U.S. 308, 22 S.Ct. 662, 669, 46 L.Ed. 922.

amount due under the policy. When vexatious delay occurred and plaintiff was necessarily required to go to the expense of obtaining counsel to collect what was rightfully due to her, she then and there became entitled to an additional sum (in this case the expense necessarily incurred preparatory to enforcing her right) by operation of the statute, which, as we have said, was a part of the policy. These things were both a part of plaintiff's recovery for which cause of action had accrued. Having once come into existence, they were valuable rights tied together, by virtue of the statute, in one recovery. They could be destroyed only by relinquishment or payment. The tender did not destroy them; for a tender, while "an irrebuttable admission of indebtedness to the amount of the tender," [14] is only a defense to be pleaded and proved and which only in certain instances after payment of money into court can for some purposes become "tantamount" to payment,[15] and may in some instances discharge a lien secured (see Annotation 93 A.L.R., p. 37, as to conflict of Missouri cases). But the tender, even of the full amount due, and its refusal do not forfeit the right of the creditor to secure judgment for the thing tendered. Generally stated, its effect is only to stop the running of interest and give the defendant the costs.[16] At the time the tender was made, the plaintiff was entitled (as the jury found) to a recovery on two separate items, one for the face amount of the policy and the other for that which the statute had given her. Neither of these rights was extinguished because the defendant changed its position and decided to pay one.

Literally, and following strictly the exact words of the statute, this is "an action against an (any) insurance company to recover the amount of (any) loss under the policy." That is what the petition set forth and what it prayed for. Appellant's able argument is predicated upon the fact that the action in this case was not *necessary* to recover the "loss under the policy." This argument would require us to insert in the statute, immediately following the word "loss," the additional words, "not tendered to the insured prior to the actual filing of suit." The legislature did not write such words and it is not our prerogative to do so. What the appellant argues is in reality encompassed and included by the words "vexatiously refused." For if the insurer tenders *the full amount due the insured at the time of tender;* and keeps such tender good, there could be no vexatious delay after the date of the tender and no necessity of bringing suit.

■ Appellant's second assignment is that the court erred in refusing two offered instructions which were to the effect that if the defendant in good faith mistakenly believed that it was not liable under the terms of the policy, and if there was "honest error" in its belief that the suicide provision excluded plaintiff, then the verdict should be in favor of defendant. We are of the opinion that this assignment must fail for two reasons.

In the first place, there was no evidence to support such instructions. The refusal of payment was directed from the home office and there is no evidence as to *why* the persons in charge at the home office did refuse. It is true that Mr. Tutt, manager of the local office, which was evidently a sales or soliciting office, testified that he was "ignorant of that particular statute," referring of course to the Missouri statute ex-

14. 52 Am.Jur., sec. 37, p. 242; Knight v. Firemen's Ins. Co. of Newark, 227 Mo. 426, 49 S.W.2d 682, 684; Duffy v. Barnhart Store Co., Mo.App., 202 S.W.2d 520.

15. Sanders & Adkins v. John Q. Mosbarger & Son, 159 Mo.App. 488, 141 S.W. 720, 722.

16. Hunt on Tender, sec. 362, p. 402; 86 C.J.S., Tender, §§ 49, 50, pp. 580, 581;

Gray v. Gurley, 252 Mo. 410, 159 S.W. 1076, 1079; Ruppel v. Missouri Guarantee, Savings & Building Ass'n, 158 Mo. 613, 59 S.W. 1000; Knollenberg v. Nixon, 171 Mo. 445, 72 S.W. 41, 43; Raymond, Kepler & Co. v. McKinney Bros., 58 Mo.App. 303, 306; Cockrill v. Kirkpatrick, 9 Mo. 697, 704; see also Mendell v. Howard, 200 Mo.App. 427, 208 S.W. 497.

cluding suicide as a defense. We stated in the forepart of this opinion that the knowledge of a soliciting agent is not chargeable to the insurer except when it falls within the scope of the thing he is authorized to do. Neither is the ignorance of such agent credited to his principal when such ignorance is not applicable to the scope of his employment. Tutt had nothing to do with determining whether the policy would be paid. He simply secured information and referred it to the claim office of the company at Galveston and executed the orders of such department by delivering any messages which were required. He was not making decisions, he was in the ranks. Like one of Tennyson's gallant Six Hundred:

His not to make reply,

His not to reason why,

His but to do or die.

It is true that he testified he *believed* a claim man in the home office was unfamiliar with Missouri laws, but obviously such belief was only speculation or based on hearsay.

■■ Secondly; while it is true that there can be no vexatious delay unless the refusal of payment was unreasonable,[17] and lack of good faith is a necessary element,[18] nevertheless defense of good faith in respect to a question of law is limited to those cases where the insurer has *reasonable grounds* for believing the law will precude the recovery on the part of the insured. In other words, there must be an open question of law, and an "honest error" in judgment as to the law will not be accepted as reasonable where the question has been definitely settled.[19] In such instance the insurer is charged with knowledge of the law in respect to its liability.[20] In this instance the Missouri statute had long been on the books. See R.S.Mo.1879, § 5982. The defendant was authorized to do business in this state and, by its agent's estimate, had been engaged in such in this state for somewhere around 30 years. There was no excuse for defendant's ignorance in regard to the statute. We hold against appellant on this assignment.

The final assignment is based upon the proposition that the court admitted evidence of and recovery for attorney fees for services rendered in connection with the transaction and litigation as a whole rather than restricting such to the value of the attorney's services to the period extending from the vexatious refusal to the date of tender of the amount due on the policy, which tender was first made prior to the filing of suit.

■ The recovery of attorney's fees by the successful litigant is not a matter of right which follows automatically from and because of the fact that justice of his claim has been established; attorney's fees are recoverable when and only when they are provided for by contract (for instance a note) or allowed by statute.

■■ The underlying reason for, and principal purpose of, the statute is not to provide for attorney's fees, in themselves

17. Adams v. State Auto Ins. Ass'n, Mo. App., 265 S.W.2d 738, 741; Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349, 355; Ewing v. Dubuque Fire & Marine Ins. Co., Mo.App., 237 S.W.2d 498, 502, 503; 18 Mo.Law Review 192 (1953).

18. Haase v. Business Men's Assur. Co. of America, Mo.App., 275 S.W.2d 381, 385; Young v. New York Life Ins. Co., Mo. App., 221 S.W.2d 843, 849; Burneson v. Massachusetts Bonding & Ins. Co., Mo.App., 205 S.W.2d 239, 241; Rieger v. Mutual Life Ins. Co. of N. Y., 234 Mo.App. 93, 110 S.W.2d 878, 882.

19. Hampe v. Metropolitan Life Ins. Co., Mo.App., 21 S.W.2d 926, 929, 930; Bonzon v. Metropolitan Life Ins. Co., Mo. App., 143 S.W.2d 336, 340; Clair v. American Bankers Ins. Co., Mo.App., 137 S.W.2d 969, 973; Hayes v. Equitable Life Assur. Soc., 235 Mo.App. 1261, 150 S.W.2d 1113.

20. Moore v. Connecticut Fire Ins. Co., 238 Mo.App. 328, 181 S.W.2d 176, 177; Roberts v. Woodmen Accident Co., 233 Mo. App. 1058, 129 S.W.2d 1053, 1055; Friedman v. State Mut. Life Assur. Co., Mo.App., 108 S.W.2d 156, 164.

and as an additional recovery simply in order to increase the amount of liability of the insurer which the parties fixed by their own contract, but to save or shift the expense which is preliminary and necessary to secure the payment of the loss under the policy when such failure of payment is due to the recalcitrance of the insurer. The main thing concerned is the payment of the amount due under the insurance policy; damages and attorney's fees are collateral, incidental or accessorial to this. The language of the statute itself, " * * * has vexatiously refused to pay *such loss,*" (the amount of any loss under a policy) "the court or jury may, *in addition to the amount thereof*", allow damages and attorney's fees, indicates an intention to allow attorney's fees, not for the purpose of collecting attorney's fees, but for collecting "such loss" under the policy. "We have, then, only to apply an admitted principle in the law of tender, which is that tender is equivalent to payment as to all things which are incidental and accessorial to the debt. The creditor, by refusing to accept, does not forfeit his right to the very thing tendered, but he does lose all collateral benefits or securities." Knollenberg v. Nixon, 171 Mo. 445, 72 S.W. 41, 43; 52 Am.Jur., sec. 35, p. 240. While an offer to pay cannot and does not destroy or take away the right to recovery of that which has already accrued, "a tender puts a stop to accruing damages or interest for delay in payment, and gives the defendant costs." Berthold v. Reyburn, 37 Mo. 586, 595; Raymond v. McKinney Bros. & Co., 58 Mo.App. 303, 305; see also 52 Am.Jur., sec. 40, p. 244; 86 C.J.S., Tender, § 50, p. 581. This principle has been applied where the insurer, who had stopped installment disability payments, indicated its willingness to resume such payments. Carnelious v. Columbian Nat. Life Ins. Co., La.App., 134 So. 341. The General Assembly has recognized the common law by its Section 514.240 RSMo 1949, V.A.M.S., which provides, "Where tender and no deposit shall be made, as provided in section 514.230, the tender shall only have the effect, in law, to prevent the running of interest or accumulation of damages from and after the time such tender was made."

As we have heretofore held, plaintiff was, and is, entitled to the reasonable value of services of an attorney rendered in order to recover the loss due under the policy, but after the policy amount was tendered and the recalcitrance of the insurer had come to an end, the prosecution of the suit thenceforward was not in reality for the purpose of collecting such loss, but purely and simply to collect attorney's fees. Hence an allowance of attorney's fees for the services after date of tender would be the allowance of attorney's fees in order to collect attorney's fees—something which would be welcome and desirable to all practicing lawyers, but unfortunately not a part of the law.

We think what we have just said is a practical construction of the statute. Any other construction would result in an impracticality, for we can envision considerable difficulty in agreement between plaintiff's attorneys and insurer as to the amount of fee which should be tendered (in this instance defendant's witness Tutt testified that plaintiff's attorneys demanded a fee of from $700 to $1,000). Such could only result in increased litigation, rather than aid in the settlement of controversies, and that is contrary to the policy of the law.

■We think the evidence and the recovery should have been restricted to the value of the services of the attorney (and there is no doubt that such services were performed and were of value to the insured) after the vexatious refusal and up to and including the time the tender was made. Since this was not done, the case should be reversed and remanded for retrial in accordance with the views herein expressed. It is so ordered.

McDOWELL, P. J., and STONE, J., concur.