### Peter C. Caruthers v. Henry Humphrey and another.

*Usury.*—On the facts stated in the opinion, usury, as alleged, held to. be established.

*Nature of a mortgage of lands.*—A mortgage is no longer, in this State, what it was originally at common law, a grant of the land to the mortgagee, defeasible upon condition subsequent, and to become absolute on failure to pay at, the specified day. It is but a security for the debt. The estate in the land is still in the mortgagor; and payment at any time before foreclosure and sale, or — in case of foreclosure by advertisement — at any time before the expiration of the time of redemption, including legal costs, will discharge the mortgage; and no reconveyance is necessary.

*Mortgage discharged by a tender.* — And where the mortgagor, after the mortgage has become due, but before foreclosure, tendered to the holder the full amount due, which the latter refused to receive, it was held, in a suit subsequently brought to foreclose, that the tender discharged the lien of the mortgage, notwithstanding the money was not brought into Court, and it was not, shown that the tender was kept good up to the time of hearing.

*Heard January 6th and 7th. Decided April 15th.*

Appeal in chancery from Shiawassee Circuit.

The facts, so far as they bear upon the legal questions, are stated in the opinion.

*McCurdy & Raynale,* for complainant, to the point that the lien of the mortgage was not discharged by the tender, cited, *Merritt v. Lambert,* 7 *Paige,* 344; *Post v. Arnot,* 2 *Denio,* 344; *Kortright v. Cady,* 23 *Barb.* 490.

*Goulds & Hanchett,* contra, referred to *Dougherty v. Randall,* 3 *Mich.* 581; *Baker v. Pierson,* 5 *Mich.* 456; *Cameron v. Irwin,* 5 *Hill,* 272; *Jackson v. Crafts,* 18 *Johns,* 110; *Kortright v. Cady,* 21 *N. Y.* 343.

CARUTHERS v. HUMPHREY.

CHRISTIANCY J:

The bill was filed to foreclose two mortgages (on the same land) executed by the defendants to William L. Coonley, both dated the 5th day of June, 1860; one for four hundred and twelve dollars and the other for two hundred dollars: both payable one year from date with interest at ten per cent. The former was assigned to complainant on the day of its date, and the latter on the 16th day of May, 1862, long after it became due. The mortgages were respectively accompanied by a promissory note for a like amount, payable in the same way, which notes were transferred to complainant with the respective mortgages.

The defense set up is usury, and a tender of the amount actually due, after default, and before the filing of the bill.

Before the execution of these mortgages, Coonley held a mortgage of the defendants, upon which there was due at the time of the execution of these mortgages about four hundred dollars, the last installment of which became due in January previous. In December 1859 Coonley wrote to Humphrey wishing to know if he could pay the mortgage, as he wished to build a house, but could not unless he should receive this money. Humphrey had previously talked with complainant about getting the money from him to pay this mortgage, and, after the receipt of this letter, went to see complainant, telling him of the receipt of the letter, and wishing to know if he could depend upon getting the money. Complainant told him he could write Coonley that the money should be forthcoming without fail. Humphrey asked him how much he was going to shave him on the money :— to which complainant replied he would let him have it at ten per cent, as they were old neighbors. Humphrey wrote Coonley accordingly, that he could rely upon the money. About the time the last

of this old mortgage became due (January, 1860), Humphrey again called on complainant for the money, who said he hadn't it then, but would have it in a short time. Coonley again wrote for the money, and Humphrey again went to see complainant, who still promised him the money, but had not got it yet. Coonley came out in March, but nothing could be effected, and he returned. In May, 1860, Coonley still pressing Humphrey for the money, the latter again called on complainant, telling him the facts, and that he had promised Coonley the money relying upon the promise of complainant. Complainant then told Humphrey he could not have it: there was no use being mealy mouthed about it: saying "you know I told you I would not shave you; but Coonley wants money pretty bad, and I can shave him now." Humphrey told him he could not shave Coonley, as whatever he took from him would come directly out of him (Humphrey), and that he would not allow Coonley to be shaved a cent, and asked complainant how much shave he wanted. Complainant said one hundred dollars and interest at ten per cent. Humphrey told complainant, if that was what he wanted, he would execute a mortgage to him and put the one hundred dollars in it, at ten per cent interest, and let Coonley have the money. Complainant replied he could not do that; as the mortgage from Humphrey to him, with that amount of shave in it, would be good for nothing. Complainant told Humphrey he could execute the mortgage to Coonley, and Coonley could assign it to complainant, and then there could be no advantage taken of it. Humphrey then asked complainant if the money would be forthcoming under *that* arrangement if he should write Coonley: to which complainant replied, it would be ready any day. Humphrey then wrote Coonley to come out, and he came on the fourth day of June, the two mortgages in question being executed on the next day.

Thus far there is no substantial disagreement in the

testimony: for, though complainant in his testimony says that "*in the purchase of the mortgage*" (meaning the $412 mortgage) he had "no negotiation with defendant Humphrey," this must be understood to refer to what took place between himself and Coonley in the actual transfer of the $412 mortgage, and not to the previous conversations or arrangements between himself and Humphrey in reference to the loan, and the mode of securing it: as complainant no where denies any one of the conversations or negotiations specifically stated by Humphrey as above set forth. His own interest, and the theory of a purchase from Coonley, independent of any arrangement with Humphrey, which he seeks to sustain by his own testimony, would naturally have prompted a specific denial of the conversations and agreement so distinctly stated by Humphrey, if these had not been true: and the neglect of complainant even to refer to them for the purpose of admission, denial or explanation, and his resort to such vague general language, which might be true whether the transaction were a purchase or a loan, give to his testimony an air of studied evasion, and excite a suspicion that he is carefully sticking to the shell, rather than giving the substance of the transaction.

The evidence in the case leaves no doubt, that the arrangement entered into on the fifth of June 1860, was, that Humphrey should execute his note, and that he and his wife should execute their mortgage to Coonley for the amount then due on the old mortgage, which we think did not exceed four hundred dollars (but which complainant obstinately insisted upon calling four hundred and twelve dollars) — that this mortgage should be made payable in one year, with ten per cent interest, that Coonley should assign this mortgage to complainant (with the note), for which complainant should advance and pay three hundred dollars. As this would leave a balance of one hundred dollars due to Coonley on account of the old mortgage, ·

and as Humphrey was in pressing need of seventy dollars, it was arranged between them that Coonley should let Humphrey have seventy dollars of the three hundred to be received from complainant, and that Humphrey and wife should execute to Coonley a further mortgage upon the same property for two hundred dollars, payable in one year, with ten per cent interest, and that this mortgage should not be recorded till after the four hundred and twelve dollar mortgage to be assigned to complainant. The two mortgages were given, and the larger assigned in pursuance of these arrangements, all on the same day. Thirty dollars of the two hundred dollar mortgage was clearly a bonus or "shave" as it was called: for though Coonley speaks of his expenses in coming out several times for the money, it is clear from his testimony, in connection with that of Humphrey, that this was but a pretext, to give plausibility to the transaction.

There is some conflict between the testimony of Humphrey and that of the complainant, as to how far Humphrey was a party to, and participated in, the arrangement for the transfer of the mortgage to complainant; and whether it was an independent and bona fide sale of the mortgage, by Coonley to complainant, or only a part of the arrangement for securing the loan previously agreed upon between Humphrey and the complainant, as well as upon the question whether complainant was, at the time, aware of the smaller mortgage given to Coonley, its consideration and amount. But we are entirely satisfied from the testimony of Humphrey, which is full, clear and consistent, as well as that of Coonley, who evidently desired to sustain the theory of a sale, and was a very unwilling witness in behalf of Humphrey, that all three of them participated in the arrangement in reference to the larger mortgage; that complainant and Humphrey were the principal parties to the arrangement, and that Coonley only participated so far as was necessary to carry out the

arrangement between them, by assigning the mortgage to complainant; that this arrangement was, in substance and effect, for a loan by complainant to Humphrey in pursuance of the verbal agreement previously existing between them; and that it was made to assume, upon paper, the guise of a sale to conceal the usury. And, so far as relates to the question of usury, the transaction, stripped of all disguise, was the same, in legal effect, as if the mortgage of four hundred and twelve dollars had been given by defendants to complainant for a loan of three hundred dollars only.

We are also satisfied from the evidence, that complainant, at the time of taking this mortgage, had full notice of and well understood the arrangement between Coonley and Humphrey in reference to the smaller mortgage given to Coonley; at least that he knew Humphrey was to execute the mortgage to Coonley to secure the one hundred dollars still due to him upon the old mortgage, and also to secure a portion of the three hundred dollars which Humphrey was to receive; though it is possible he may not have known that this latter sum was just seventy dollars, or that the thirty dollars was to be included in the mortgage as a bonus: but both these facts had been fully brought to his notice before he purchased this mortgage, which was long after it was due, and we are strongly inclined to think that he knew all the facts in reference to this mortgage, at the time of its execution; and there appears very clearly to have been an express understanding at the time, between complainant and Coonley, that this mortgage should not be recorded until after the four hundred and twelve dollar mortgage assigned to complainant.

The complainant, therefore, so far as relates to the defense of usury, stands in no better position than if both mortgages (and the accompanying notes) had been execu-

ted directly to him, and Coonley had never been con-cerned in the transaction.

But it is objected, *first*, that the answer does not expressly aver that complainant had actual notice of the usury; and *secondly*, that there is a variance between the allegation of usury and the proof.

We see no ground for either of these objections. The answer sets forth the whole transaction as to both mort-gages, substantially as proved, and shows complainant's full knowledge . of them at the time: and as to the larger mortgage, at least, shows complainant to have been directly an active and a principal party to the whole arrangement or agreement from which the usury necessarily resulted, and insisting upon that usury as an indispensable condition of the loan. An express allegation of notice would, in such case, be idle and superfluous. But independent of this, we think the allegations of notice would have been sufficient; as it is expressly alleged that complainant " well knew the consideration upon which both said mortgages and notes were given," also that, at the time of the execution of the smaller mortgage, complainant knew that thirty dol-lars was reserved and taken by Coonley as usury; also that " complainant had notice, before the assignment of said mortgages and notes to him, that in and by each of them, a greater rate of interest than is allowed by law had been reserved and taken, in manner aforesaid " (refer-ring to the facts previously stated in the answer substan-tially as we have above stated them).

As to the second objection, it is urged that the usuri-ous agreement is not proved as alleged, inasmuch as the allegation as to the larger mortgage, is, that the agreement was for one hundred and twelve dollars usury, whereas the proof shows that all the usury was put into the smaller mortgage: and, therefore, that the larger was not usurious. The fallacy of this position is too palpable to require comment.

CARUTHERS v. HUMPHREY.

The fact that the one hundred dollars (for the difference between this amount and the one hundred and twelve is not urged in this connection) was included in another mortgage to Coonley, as the balance still due him on his old mortgage, can in no way alter the fact that the four hundred and twelve dollar mortgage was given to secure a loan of three hundred dollars only — and the effect would have been the same whether this mortgage had been given or not, so long as Humphrey remained liable to Coonley for this amount, and so long as the fact remains that the complainant loaned and Humphrey received but three hundred dollars on his mortgage of four hundred and twelve.

This two hundred dollar mortgage was not originally given for complainant's benefit, but for Coonley's. Fifty dollars was paid upon it by Humphrey to Coonley, May 16th, 1862, and it was subsequently, on the same day, assigned to complainant.

It remains only to consider the effect of the tender.

It is clearly proved, and the fact is not disputed, that, on the 28th day of July, 1862, Humphrey tendered to complainant the full amount due on the two mortgages, exclusive of the bonus in each case, and the interest thereon — in other words, exclusive of what we have found to be usury. This tender was refused by complainant, and Humphrey, with full notice to complainant, deposited the money on the same day with a Mr. Simonson, near complainant's residence, to be paid to complainant when he should choose to receive it. But the money was not brought into Court, nor does it appear by the evidence that the tender was kept good up to the time of the hearing, though it is shown to have been still in Simonson's hands when the evidence was taken.

The naked question, therefore, is, whether the tender alone, made after default, or failure to pay on the day when due, had the effect to discharge the mortgages, or release the land from their incumbrance.

CARUTHERS v. HUMPHREY.

We think this question must be answered in the affirmative.

A mortgage is no longer in this State what it was originally at common law, a grant of the land to the mortgagee, defeasible upon condition 'subsequent, and to become absolute on failure to pay at the specified day. It is but a security for the debt. The estate in the land is still in the mortgagor: and payment at any time before foreclosure or sale, or (in case of foreclosure by advertisement) at any time before the expiration of the time of redemption — including, of course, any legal costs which may have been made — will discharge the mortgage in the same manner as if made on the day of payment mentioned in the mortgage; and no re-conveyance is necessary to vest the title in the mortgagor, in the one case more than the other.

The mortgage, therefore, is but a lien upon the land as security for the debt; and, so far as relates to the effect of a tender, we think this lien is precisely analogous to that of a lien upon, or a pledge of, goods as security for a debt. And in such case it is well settled that, while a tender of the amount due does not, without acceptance, extinguish the debt, nor release the debtor from personal liability, it extinguishes the lien, and the creditor loses his right to all collateral securities. *See Moynahan v. Moore*, 9 *Mich.* 9.

We have been saved the labor of a full discussion of this question, by the decision of the same question here involved by the Court of Appeals in New York, in *Kortright v. Cady*, 21 *N. Y.* 343. And in the able opinions of Davies and Comstock, Judges, given in that case, we fully concur.

We think, therefore, the lien of the mortgage was wholly discharged by the tender; and that complainant can look only to the personal responsibility of his debtor. And, this being a proceeding to foreclose — or, in other words,

to enforce the lien of the mortgages, the Court below was right in dismissing the bill, and the decree of that Court must be affirmed, with costs.

The other Justices concurred.