### FOWLER v. SAPRE.

1. MORTGAGES—RIGHT TO RELEASE PART OF MORTGAGED LAND INURES TO BENEFIT OF MORTGAGORS, THEIR GRANTEES AND ASSIGNS.

The right to invoke a covenant in a mortgage to release parts of the land mortgaged on payment of specified amounts is in the mortgagors, their grantees and assigns, and default in payment of the mortgage would not bar said right.

2. SAME—RIGHT TO RELEASE OF 40 ACRES OR MULTIPLE THEREOF ESTABLISHES GOVERNMENT 40-ACRE PARCEL AS A UNIT.

A provision in a mortgage covering about 6,000 acres of land for the release of "any of the parcels of land herein described containing 40 acres or any multiple thereof," on the payment of $2.50 per acre, is construed as establishing the government 40-acre parcel, whether full or fractional, as a unit, in order to permit releases of any of the premises in such units or combination of units, and to not allow the splitting of a unit singly or in combination with others. FELLOWS, WIEST, and McDONALD, JJ., dissenting.

Appeal from Montmorency; Emerick (Frank), J. Submitted January 3, 1928. (Docket No. 18, Calendar No. 33,385.) Resubmitted May 4, 1928. Decided July 24, 1928. Rehearing denied October 1, 1928.

Bill by Verne C. Fowler and another against Morris Sapre and others for the foreclosure of a mortgage. John G. Krauth was permitted to intervene, and prayed for the release of certain land from the mortgage. From a decree for intervener, plaintiffs appeal. Modified and affirmed.

*Herman Dehnke* (*Harold F. Scovel,* of counsel), for plaintiffs.

*Carl R. Henry* (*Guy D. Henry,* of counsel), for intervener.

WIEST, J. (*dissenting*).   The bill herein was filed to foreclose a mortgage covering about 6,000 acres of land in Montmorency county.   The mortgagors made no defense.   The mortgage contained the following provision:

"Mortgagors shall have the privilege of obtaining a release of this mortgage, or to any of the parcels of land herein described containing forty (40) acres, or any multiple thereof, by paying two dollars and fifty cents ($2.50) per acre upon said tract to be released, which sum so paid is to be applied as partial payments upon the note, or notes above described first maturing after such payment to the said parties of the second part."

The mortgage described 93 parcels of land.   Some of the land mortgaged consisted of lots according to. government survey and fractional 40's located on lakes and streams.

John G. Krauth intervened, set up his purchase, subject to the mortgage, of five parcels of the land containing respectively 45.54 acres, 38.05 acres, 38.05 acres, 31.30 acres, and 31.31 acres of land, claimed tender of the sum of $2.50 per acre, offered to pay interest and taxes, and prayed for release of the parcels. At the time of his purchase Mr. Krauth was aware of the provision in the mortgage.   In the circuit the parcels were released from the mortgage and decree of foreclosure granted against the remainder of the lands.   Plaintiffs appealed, and claim the privilege of release was personal to the mortgagors and did not pass to intervener; that the privilege in any event did not extend to lots or fractions of more or less than 40 acres, and claimed the parcels released by the decree have greatly increased in value since the giving of the mortgage, because of location on waters and availability for resort purposes.

If the parcels selected by Krauth fall within the covenant it is of no moment that he chose the best in

demanding releases.    As said in *Lane* v. *Allen*, 162 Ill. 426 (44 N. E. 831) :

"It would be singular if he did not make such a selection."

While there is authority holding that the covenant to release parts of land is personal to the mortgagor (*Rugg* v. *Record*, 255 Mass. 247 [151 N. E. 95]), the weight of authority is that the right to invoke the covenant is in the mortgagors, their grantees and assigns (*Gammel* v. *Goode*, 103 Iowa, 301 [72 N. W. 531]).    Default in payment of the mortgage did not bar right of the mortgagors or of grantees to have partial release in accordance with the mentioned covenant.    *Gammel* v. *Goode, supra.*    Without words of limitation, the right to release of parcels of land was not personal to the mortgagors but a covenant running with the land.    Intervener, grantee subject to the mortgage, acquired rights, inclusive of the right to have release in accordance with the very terms of the mortgage.    The provision in the mortgage limited right of release to parcels containing 40 acres of land or multiples thereof, and most of the descriptions in the mortgage are of 40-acre parcels or multiples thereof, and none of the selected parcels, with the exception of one, consists of 40 acres, and that parcel exceeds 40 acres.

Counsel for intervener contend that, inasmuch as all the descriptions in the mortgage are in terms of quarter sections, lots, half sections and sections, it was obviously the intention to provide for the release of any parcel so described even if a fractional 40.    It is well understood that quarter sections, except bordering the west and north lines of a township, are divided into quarters by lines drawn north and south and east and west equi-distant from the corners, and counsel claim such a "subdivision is the smallest 'legal' subdivision—or smallest tract of this character recognized by the

statutes of the United States," and insist "it is obvious that it was used in this sense by the mortgagors in the instant case."

We have given consideration to the fact that quarter sections are divisible into quarters, and, except on the west and north town lines and on rivers and lakes, each quarter of a quarter is usually allotted an area of 40 acres, and, if short or plus of such quantity for any reason, is designated as fractional or as a lot, but we cannot employ such knowledge in construing the right to release under the covenant in the mortgage.

The contention of intervener would be persuasive had the privilege of release specified "any of the parcels of land herein described," and omitted the express limitation, "containing 40 acres or any multiple thereof." We cannot ignore the designation adopted by the parties. The mortgage covered many parcels containing 40 acres and multiples thereof, but intervener does not ask for the release of any such descriptions. The covenant applies, by its express terms, to parcels "containing 40 acres, or any multiple thereof." Four of the parcels released by the decree in the circuit do not contain 40 acres each, and the other contains 40 acres and a fraction over of 5.54 acres. None of the parcels fall within the designation in the covenant.

To sustain right to release of the parcels mentioned we would have to change the wording of the covenant in the mortgage, for the language thereof is too plain to admit of accomplishment of plaintiff's contention by way of interpretation or construction. At first blush it would seem highly technical to say the right to release applies to 40 acres and multiples thereof and not to fractional 40's, surveyed as such or as lots of more or less than 40 acres, but we must hold that the covenant governs, and, as plaintiff plants right to release upon the covenant, it is not technical to confine his rights to the terms of the covenant.

In *Hall* v. *Home Building Co.*, 37 Atl. (N. J. Eq.) 1019, a mortgage gave the mortgagor the right to have lots containing 2,000 square feet of land released upon payment of $90, and in foreclosure the mortgagor contended that:

"By the interpretation of the release clause in the mortgage itself, they have a right to releases of their several tracts from the lien of the mortgage upon payments to the mortgagor at the rate of $90 for each 2,000 feet released, whether they contained exactly 2,000 square feet or fractional parts thereof."

To this the vice-chancellor said:

"I cannot interpret the clause as expressed in the mortgage to give a right to the mortgagor and its grantees to secure the release of a smaller portion than 2,000 feet, or any fractional part of 2,000 feet, without violence to the expressed words and manifest meaning of the contract, by thrusting into the agreement (which is perfectly clear in itself) a term not assented to by the mortgagee."

(We do not find this opinion in the New Jersey reports.)

We hold that intervener, as purchaser subject to the mortgage, succeeded to all the right, title, and equities of the mortgagors, inclusive of the right to have release of portions of the mortgaged property on compliance with the covenant in the mortgage; that such right survived default in payment of the mortgage; that under the covenant in the mortgage the right to release was limited to parcels of land containing 40 acres or any multiple thereof and did not extend to the parcels of land selected.

This does not mean that a resurvey would be necessary in order to fix upon parcels having exactly 40 acres of land, for such may be selected from descriptions in the mortgage, but does mean that parcels confessedly containing less than 40 acres of land or with a considerable fraction in excess of 40 acres do not fall within the terms of the covenant.

The portion of the decree in the circuit granting intervener releases should be reversed. Plaintiffs should recover costs of this court against intervener, and a decree should be entered in this court in accord with. this opinion.

FELLOWS and MCDONALD, JJ., concurred with WIEST, J.

FEAD, C. J. This is a bill for foreclosure of a purchase price real estate mortgage executed October 1, 1924, covering 5,999.54 acres of cut-over pine lands in Montmorency county. The issues here arise out of construction of the clause:

"Mortgagors shall have the privilege of obtaining a release of this mortgage, or to any of the parcels of land herein described containing forty (40) acres, or any multiple thereof, by paying two dollars and fifty cents ($2.50) per acre upon said tract to be released, which sum so paid is to be applied as partial payments upon the note, or notes, above described first maturing after such payment to the said parties of the second part."

Intervener Krauth is a subsequent purchaser of lands described in the mortgage as one quarter section, one 40-acre parcel, and one government lot, the quarter section actually consisting, however, of two 40's and a 45-acre lot according to the government survey. The surveyed acreage is about 192.

The circuit court decreed foreclosure, but held Krauth entitled to a release of his lands from the mortgage on payment of the stipulated sum of $2.50 per acre, upon surveyed acreage, Krauth offering also to pay the accrued interest thereon. Plaintiffs appealed. Krauth's right to a release presents the questions at bar.

When the mortgage was executed, that part of the land which had sufficient second growth to make game cover, especially if on or near a lake, was worth from

$5 to $10 per acre. The other land graduated in value down to a few cents per acre. It was then all practically unsalable. Release of the whole of it at $2.50 per acre would have resulted in a mortgage deficit of $1,000. Intervener bought his lands in 1926 at $10 per acre for 121 acres, and at $5 for 71 acres. The mortgaged premises are not in a block. About 5,000 acres are situated in the east half of town 32 north, range 3 east, and the west half of town 32 north, range 4 east, and constitutes a tract with a fair degree of contiguity, although only about half of it actually touches. The other lands are scattered over four townships. There are 11 40's fractional because of location on the west line of township 32-4. There are 15 to 20 lots, fractional because located on lakes. The fractional 40's comprise probably 1,000 acres or more.

In the circuit court, counsel for plaintiffs contended for a literal and quantitative construction of the clause, that releases were permitted only of described parcels which contained precisely 40 acres or multiples by actual survey. *Hall* v. *Home Building Co.*, 37 Atl. (N. J. Eq.) 1019. With possible but entirely improbable accidental exceptions, because of the known inaccuracies in the government survey, no government description would be found to contain just 40 acres or multiple thereof. Upon further consideration, the literal construction was recognized to be so completely destructive of the partial release privilege, which was a valuable element of the mortgage transaction, that counsel for plaintiffs have conceded it to be untenable, and have definitely abandoned it in their brief.

With the literal and strictly quantitative construction rejected as unreasonable and untenable, a substitute and reasonable construction must be sought. It should express the purpose and intention of the parties to conserve to the purchaser and mortgagors the benefit of

their bargain by fairly enabling them to make partial sales without the necessity of paying the mortgage in full, under workable administrative conditions, and as free as may be from chance of controversy. As the circuit judge suggested, "It should receive an honest, sensible, and possible construction."

In this court, counsel for plaintiffs adhered to the quantitative construction, but with change of standard, contending that release may be had only of parcels which, *theoretically under the government survey,* contain exactly 40 acres or multiples. This would exclude the 15 to 20 fractional 40's on lakes and the 11 descriptions on the west township line. It makes the government survey the test of quantity although the parties made no reference to the survey in the mortgage.

Consideration of the effect of the construction now contended for by plaintiffs clearly demonstrates its unreasonableness. According to the government survey, of which the court takes judicial notice (23 C. J. p. 95), fractional 40-acre parcels vary widely in acreage. Some of them more nearly approximate an exact 40 acres than do some theoretically exact 40-acre descriptions. That the parties, when the mortgage was executed, intended to make fine distinctions between full and deficient or excessive fractional 40's in land of such small actual and release value is hardly conceivable. It did not appear that the fractional 40's on the town line had any special value. If, as now contended by plaintiffs, they intended to exclude at least the lake lots from the release clause, they doubtless would have made it plain by appropriate words. That such distinction was not in their minds seems rather clearly demonstrated by the fact that, although there are 15 to 20 lake lots in the transaction, only 4 are described as lots in the mortgage. This contention evidently has been inspired by the transforma-

tion of what were merely lake 40's when the mortgage was executed into foot frontage.

Part of the land is practically worthless and could be sold, if at all, only in connection with good land. So exclusion of the lake lots from release would appreciably impair the privilege. Exclusion of the fractional 40's would render 1,000 acres or more, one-sixth of the total, unsalable except upon payment of the whole mortgage sum. Exclusion of the fractional 40's along the west township line would divide the only fair tract in the transaction about in half. Land of this sort is usually sold in tracts or groups of parcels. Such extensive reservations from release, without language clearly evidencing the intention, cannot reasonably be said to have been in the minds of the parties. And there was no reason in fact and the mortgage contained no indication of a purpose to leave the 11 fractional 40's on the town line standing in a row as a sentinel to guard the balance of the mortgage.

The mortgage contains no schedule nor designation of acreage or exemption, as would have been the ordinary procedure had abundant exemption been intended. So plaintiffs' construction would require search of the government records to determine acreage and a complete checking and redescription of the property to ascertain which of the parcels described in the mortgage as full are in fact fractional. As the parties made no provision for obtaining such extraneous information, it cannot be said that they intended to make it a part of their contract. And as they live in different States, this contended construction presupposes a plan which could hardly fail to result in complications, uncertainty and delay in procuring releases and closing sales.

The language of the mortgage does not require the construction contended for by plaintiffs, as the in-

strument makes no reference to the government survey, as test of quantity or otherwise; and the construction is so subversive of the purpose of the release clause and contains such possibilities of administrative difficulties that it ought not to be adopted unless no more reasonable construction can be found.

If a quantitative construction be considered imperative, there is one which is natural, logical, and reasonable, that the 40-acre parcels and multiples subject to release are to be determined by the descriptions in the mortgage itself. All the lands are described in such quantities except 4 lots. This construction finds no advocates among counsel, but it cannot be overlooked upon a fair review of the case. It has the advantage of obviating the necessity of reading into the mortgage reference to the government survey, actual survey, or other extraneous means of ascertaining qualification for release. It is certain, attended by no administrative difficulties, and substantially serves the purpose of the parties. In my opinion, it would be conclusive were it not that there was no reason, appearing in the mortgage or the surrounding conditions, for exclusion from the release privilege of 4 lots, containing 160 acres or less, out of 6,000 acres, especially when such construction would entitle to release 11 to 16 other similar lots fractional in fact but described as full. The 4 represent too small a part of the acreage and the principal sum to have been considered the objects of special solicitude without some sort of declaration or intimation to that effect.

Once the precisely quantitative construction, *i. e.,* release upon surveyed acreage, is departed from, the way is open to give effect to the real purpose of the use of the term "containing forty (40) acres, or any multiple thereof." Its purpose here can admit of little doubt. It was merely an expression of the customary precaution, in order to avoid controversy as

to parcels and payments and confusion as to descriptions and tax obligations, to establish a unit of release so that the mortgagors could split the larger descriptions of the mortgage into 40's for sale, but could not split a unit, and that the mortgagees would be entitled to the release price upon the basis of a sum certain per unit. "Forty acres" is the basic unit of the government survey, in accordance with which the land was described in the mortgage and by which the parcels must be located. A lot or fractional 40 is a variation in quantity, not in genus, of that unit, produced by necessity through the breaking of survey lines by "Indian reservations, bodies of water or other outside interferences" and through, over or under run caused by the fixed direction of the meridian line, just as theoretical 40's differ in acreage because of inaccuracies in the survey. "Forty acres" is the natural designation of the units of the lands described in the mortgage at bar.

In my opinion, the qualifying phrase "containing forty (40) acres, or any multiple thereof" was intended and operates to establish the government 40-acre parcel, whether full or fractional, as a unit, in order to permit releases of any of the premises in such units or combination of units, and to not allow the splitting of a unit singly or in combination with others.

This construction produces a reasonable and harmonious instrument. It is fairly within the language and completely fulfills the purpose of the release clause.

Its administration is simple and attended by no difficulties. It mirrors the intention of the parties that the mortgagors, who had just bought the premises, should have immediate benefit of their purchase by being permitted to make sales of "all or any" of the premises. It requires the reading of no extraneous tests of quantity into the mortgage, tests ready at

hand to the parties but which they did not adopt by reference. The descriptions in the instrument itself determine the amounts to be paid for release. It avoids the necessity of imagining into the minds of the contracting parties distinctions for which neither the terms of the mortgage nor the conditions existing at the time of its execution offer any foundation.

Diligence of counsel and independent investigation have disclosed no authorities in point, but the following excerpts from the opinion in *Lente* v. *Clarke*, 22 Fla. 515, 519, 524 (1 South. 149), may be of interest. Upon construction of a contract reading:

"Dec. 18, 1883.
"I agree to make good titles in fee to my forty near the Garrison lands in Hernando county to Wm. K. Lente.    Consideration, $75.    Received.
"THOMAS W. CLARKE.
"Witness, M. P. O'NEAL."

The court said:

"There is no doubt as to the meaning by the parties of the expression "forty" used in the contract. By "forty" thus used in connection with lands is meant either the north or south half of a half of a quarter section of land. The statutes of the United States authorize the division of each quarter section of land into east and west halves by a line drawn through it north and south equidistant between the east and west corners of the quarter sections; and further provides for the subdivision of such half-quarter sections into north and south halves by a line run through the middle of them east and west. §§ 2395, 2397, R. S. U. S. This subdivision of a half quarter section is the smallest subdivision of an entire or regular section of land recognized by the United States statutes. It usually contains about forty acres, as does an entire section about six hundred and forty acres, or a half of a quarter section about eighty acres, and a quarter section about one hundred and sixty acres. Theoretically an entire section should contain 640 acres, and the above mentioned smallest subdivision 40 acres, but on account of inaccuracies of surveys they both often fall a few

acres short; yet the term "forty," whether such subdivisions contain forty acres or less, has in this State become as fixed and as well understood term to designate them as ever attached from common or general use to anything. No one can for a moment doubt that by the expression, "my forty near the Garrison lands, in Hernando county," both parties understood and were dealing as to a single half of a half of a quarter section, claimed to be owned by the intestate, Thomas W. Clarke, and lying near lands known as the Garrison lands in that county."

I agree with Mr. Justice WIEST that the right to obtain releases inured to the benefit of intervener.

The learned circuit judge reached the correct construction of the release clause at bar except in the one particular of permitting release upon surveyed acreage. The acreage, whether from actual or government survey, is not material. Lands are to be released upon the basis of 40-acre units, according to the description in the mortgage, and are to be paid for accordingly. A fraction described as a lot, whether it contains more or less than 40 acres, would count as a 40-acre parcel.

The decree will be modified to require intervener to pay the contract price in accordance with this opinion and otherwise affirmed, with costs to intervener.

NORTH, CLARK, POTTER, and SHARPE, JJ., concurred with FEAD, C. J.