FEDERAL DISCOUNT CORP. *v.* RUSH.

1. MORTGAGES—TENDER—PARTIAL RELEASE.
    Since mortgagee may not refuse a tender for any reason not found in the language of the mortgage itself, tender under partial release clause therein discharged mortgage lien as to lots for which tender was made.

2. SAME—TENDER—EVIDENCE.
    Record, *held*, to show that tenders for releases of subdivision lots subject to mortgage on whole property in which it was stipulated that covenants should run with the land, were of a sufficient amount in lawful money to effect release of respective lots under partial release clause notwithstanding mortgage was otherwise in default.

3. SAME—REFUSAL OF TENDER—DISCHARGE OF LIEN.
    Wilful and absolute refusal by mortgagee, without just cause, to accept a lawful tender, discharges the mortgage lien.

4. SAME—TENDER—PARTIAL RELEASE—DISCHARGE OF LIEN.
    Tender of sums pursuant to partial release clause of a mortgage by one entitled to release thereunder operates to discharge mortgage lien as to property covered by tender.

5. SAME—PARTIAL RELEASE—COVENANTS RUNNING WITH LAND— VENDOR AND PURCHASER.
    Under mortgage on subdivision providing for partial release and that covenants therein ran with the land, purchaser of lots under land contract with mortgagor *held*, entitled to demand benefits under partial release clause, where the mortgage does not contain words of limitation restricting release clause.

6. EQUITY—MORTGAGES—DISCHARGE OF LIEN—FORECLOSURE.
    Under maxim that he who seeks equity must do equity, land contract purchaser of lots in subdivision, subject to mortgage containing partial release clause and providing that covenants ran with the land, which made proper tender under such release clause, need not renew tender in court and is entitled to have bill to foreclose dismissed as to it, since mortgage lien was discharged by such tender as to lots covered thereby.

7. MORTGAGES—TENDER—DISCHARGE OF LIEN—RENEWAL OF TENDER.

Tender of sum stipulated under mortgage on subdivision to effect release on any lot therein under partial release clause operates to discharge lien and, once discharged, lien could not be revived, hence renewal of tender in court was unnecessary.

8. SAME—FORECLOSURE—PARTIAL RELEASE—BANKRUPTCY OF MORTGAGOR.

In foreclosure suit on mortgage on subdivision property, containing partial release clause and providing that covenants run with the land, bankruptcy of mortgagor subsequent to proper tender by latter's land contract purchaser for release of certain lots, which tender was refused by mortgagee without just cause, *held,* not such a hardship as to require holding the lots in question subject to the mortgage lien.

Appeal from Wayne; George (Fred W.), J., presiding. Submitted October 12, 1934. (Docket No. 7, Calendar No. 37,407.) Decided December 10, 1934.

Bill by Federal Discount Corporation, a Delaware corporation, against Grove P. Rush, Edna M. Rush, Cadillac Memorial Park & Mausoleum Association, a Michigan corporation, and others to foreclose a mortgage. From decree excepting certain lots from the property to be sold, plaintiff appeals. Affirmed.

*Thos. F. Maher,* for plaintiff.

*William A. King* and *Axford, Tarsney & Axford,* for defendant Cadillac Memorial Park & Mausoleum Association.

BUTZEL, J. On September 1, 1925, Grove P. Rush and Edna M. Rush, his wife, executed a mortgage for $75,000 to the Federal Discount Corporation on property in the township of Nankin, Wayne county, Michigan, town 2 south, range 9 east, which prop-

erty had been re-subdivided into over 500 lots and was known as Hawthorne Woods Subdivision No. 1. The indenture contained a partial release clause, providing for the release of any lot or lots upon payment to the mortgagee of the sum of $200 per lot, with the exception of a few 20-foot lots along the northerly line of the subdivision, which were to be released in groups of two or more upon payment of $125 per lot. It was further provided that all the covenants of the mortgage should run with the land.

On May 19, 1927, Mr. and Mrs. Rush deeded 30 of the lots to the Cadillac Memorial Park & Mausoleum Association, and shortly thereafter the discount corporation executed a release of these 30 lots from the mortgage. On May 19, 1927, Mr. and Mrs. Rush also sold 215 of the lots to the Cadillac Memorial Park & Mausoleum Association on a land contract containing a provision that, in the event of the vendors' failure to meet the payments of principal and interest due on any mortgage on the property, the vendee might make the payments and be credited with the amounts thus paid upon the sums due or first to become due on the land contract.

On October 24, 1928, the Cadillac Memorial Park & Mausoleum Association, referred to hereafter as the "association," prepared a partial release for 55 lots, and tendered the sum of $11,000 to the discount corporation, with a request for the release from the mortgage of the lots specified. The discount corporation refused to accept the tender on the ground that it was insufficient and not in proper form. Thereupon tender was renewed in lawful money of the United States, but was again refused on the ground that it was insufficient in amount. On January 23, 1929, the association tendered the sum of $13,600, together with a request for the re-

lease of 68 additional lots covered by the mortgage. At the same time it delivered to the discount corporation a memorandum of decisions by this court supporting its claim that it was entitled to a release of the lots as requested, and holding that the absolute refusal of a sufficient tender releases and discharges the lien of a mortgage. This tender was also refused. The mortgage was in default at the time of the tenders.

On May 22, 1930, the discount corporation, plaintiff, instituted the present proceedings in equity, seeking to foreclose the mortgage, and asserting a lien upon all the lots, including the 30 that had already been released, and the 123 for the release of which tender had been made and refused. Plaintiff claims that it had advised the association to obtain the cooperation and consent of Mr. and Mrs. Rush for the purpose of securing the release, and that such consent was not obtained. It also claims that it was willing to release at the request of the association—

"Provided the moneys paid were equitably distributed against the mortgage. In other words, whatever proportion the lots now asked to be released bore to the whole of the properties covered by the mortgage as to size and value."

It is unnecessary to determine the meaning of the language quoted. The association denies that there was any refusal to grant the release except on the theory that the tender was not good, and correctly contends that the discount corporation had no right, in any event, to refuse a tender for any reason not found in the language of the mortgage itself. The record shows that the tenders were of a sufficient amount in lawful money.

The association claimed no affirmative relief in its answer, but asserted as a matter of law that its lots should not have been included in the foreclosure proceedings, on the ground that the release executed by the discount corporation as to a part of them, and the tender by the association of the required amounts for the release of the others, had discharged such lots from the lien of the mortgage. The trial judge upheld this contention and excluded the lots in question from the operation of the decree, stating that plaintiff's refusal to accept the tenders was wilful, absolute, and without just cause, and resulted in a discharge of the lien as to the lots for which payments were tendered.

It is well settled in Michigan that a wilful and absolute refusal by the mortgagee, without just cause, to accept a lawful tender, discharges the mortgage lien. *Caruthers* v. *Humphrey,* 12 Mich. 270; *Moynahan* v. *Moore,* 9 Mich. 9 (77 Am. Dec. 468); *Potts* v. *Plaisted,* 30 Mich. 149; *Hill* v. *Carter,* 101 Mich. 158; *Eslow* v. *Mitchell,* 26 Mich. 500; *Eberle* v. *Sambab,* 248 Mich. 508. Plaintiff, however, claims that in order to invoke the above rule there must be a full and absolute tender of the entire amount due and owing on the mortgage. In *Fowler* v. *Sapre,* 243 Mich. 266, and *Kerschensteiner* v. *Northern Michigan Land Co.,* 244 Mich. 403, we held that successors in title of a mortgagor were entitled to a partial release upon payment of the necessary amounts as provided in the mortgage, notwithstanding the fact that the mortgage was in default when the demand for a release was made. In the foregoing cases the tender had not been withdrawn, but was continued at the time of the hearing. The question, therefore, did not arise as to whether a continuance of the tender was a condition precedent to the right to a discharge under a partial re-

lease clause. However, we can see no logical reason why the wilful and absolute refusal by a mortgagee, without just cause, to accept a tender made for the purpose of securing a partial release in accordance with the provisions of a partial release clause contained in the mortgage, should have any different effect than the refusal of a tender of the full amount due thereon, made for the purpose of discharging the entire mortgage. In either case the mortgagee forfeits his right to the lien by his unjust refusal to grant that to which the mortgagor or his assignee is entitled as a matter of right.

Plaintiff further questions the right of a purchaser of the property under a land contract to demand the benefit of the release clause in the mortgage. In *Fowler* v. *Sapre, supra,* 268, 278, we held:

"While there is authority holding that the covenant to release parts of land is personal to the mortgagor * * * the weight of authority is that the right to invoke the covenant is in the mortgagors, their grantees and assigns. * * * Without words of limitation, the right to release of parcels of land was not personal to the mortgagors but a covenant running with the land."

In the case at bar, not only does the mortgage contain no words of limitation restricting the release clause to the mortgagors, but in addition it provides that "all the aforesaid covenants shall run with the land." The association, as an assignee of the mortgagor under a land contract, was therefore plainly entitled to the benefit of the release clause.

The only other question is whether, under the oft-repeated maxim that "he who seeks equity must do equity," the association, seeking to have a court of equity declare its lots discharged from the mortgage, should have kept its tender good for that purpose. The association filed no cross-bill, nor

did it ask for affirmative relief in any other manner. It simply denied in its answer that plaintiff was entitled to relief as to the lots in question, and asked that the bill be dismissed as to the association, on the ground that the lien had been discharged as to those lots, as a matter of law, upon lawful tender being made in accordance with the terms of the mortgage. In *Moynahan* v. *Moore, supra,* a tender had been refused, and when plaintiff sought by court action to regain possession of his property, which was retained under a claim of lien, the question arose as to whether it was necessary to renew the tender in court. The court stated that—

"The tender having once operated to discharge the lien, it was gone forever, and nothing could revive it. The reasons which require the money to be brought into court do not apply in such a case. By refusing to receive the money tendered, the defendant lost his lien, and can only rely upon the personal liability of the plaintiff."

See, also, *Caruthers* v. *Humphrey, supra; Van Husan* v. *Kanouse,* 13 Mich. 303; *Hill* v. *Carter, supra.*

Plaintiff finally claims that if the lien be released as to the lots in question, it will suffer a great hardship, inasmuch as Mr. Rush, since the institution of this suit, has been released from the debt by a discharge in bankruptcy. This, however, does not change the rule of law. It was a risk that plaintiff took when it declined the association's lawful tenders without just cause.

The decree of the trial court is affirmed, with costs to defendant Cadillac Memorial Park & Mausoleum Association.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.